**In re Larry P. ROBERTS and Barbara L. Roberts, Debtors,**

**Roe, Fowler & Moxley, Applicant for Interim Compensation/Appellant.**

**In re ROBERTS, INC., Debtor,**

**Roe, Fowler & Moxley, Applicant for Interim Compensation/Appellant.**

**Nos. 85–C–201S, 85–C–202S.**

United States District Court, D. Utah, C.D.

June 8, 1987.

Bryce E. Roe, Janette Bloom, Roe, Fowler & Moxley, Salt Lake City, Utah, for appellant.

Before JENKINS, WINDER, GREENE, and SAM, District Judges, Sitting En Banc.

SAM, District Judge.

## INTRODUCTION

Attorneys for Appellant: Bryce E. Roe and Janette Bloom, Roe, Fowler & Moxley, Salt Lake City, Utah.

Roe, Fowler & Moxley, a Salt Lake City law firm, appeals the decision of the Bankruptcy Court which denied the firm's applications for reimbursement of the costs and fees incurred in representing debtors in possession in two separate, interrelated Chapter 11 proceedings. The District Court, sitting en banc, heard the appeal.

*Facts*

On April 30, 1982, the law firm of Roe and Fowler (referred to hereinafter as the law firm) filed two separate Chapter 11 bankruptcy petitions; one on behalf of Larry and Barbara Roberts, and the other on behalf of their family plumbing and heating business, Roberts, Inc. The business is owned exclusively by the Roberts family with Larry Roberts holding the primary interest and his wife, Barbara Roberts, and their children each holding a small part. Larry Roberts is the President of the corporation and Barbara Roberts is the Secretary/Treasurer. Larry Roberts was employed by Roberts, Inc. as a plumber.

Prior to these bankruptcy filings, the law firm had represented both Larry Roberts and Barbara Roberts in their individual capacities and had represented the family business, Roberts, Inc. At the time the bankruptcies were filed, Roberts, Inc. owed the law firm $2,241.50 in legal fees unrelated to the bankruptcy petitions. Also, Larry Roberts owed Roberts, Inc. $43,196.51, and Roberts, Inc. owed Barbara Roberts $57,693.87.

The law firm believed the apparent conflicts of interest among the parties, caused

by the creditor-debtor relationships and the prior representation by the law firm, were more theoretical than real. The law firm concluded that the interests of the parties, as they attempted to reorganize, were not truly adversarial. The law firm also weighed heavily their clients' interest in collectively minimizing legal fees where the family was experiencing financial distress and the law firm was already familiar with the business and individual situations. Accordingly, the law firm continued to represent the family business and its two principals, Larry and Barbara Roberts, in their separate bankruptcies.

In conjunction with the filing of the separate bankruptcy petitions, the law firm, pursuant to statute, applied to the court for approval of its employment as attorney for debtors in possession, Larry and Barbara Roberts and Roberts, Inc. Supporting affidavits stated that the law firm did not hold or represent any interests adverse to the estate, and that the attorneys were disinterested persons without noting either the legal fees owed by Roberts, Inc. to the law firm in a prior, unrelated matter or any other potential conflict among their respective clients. In apparent reliance on these affidavits, the court approved the employment by the debtors in possession.

The law firm's involvement resulted in approval by the court of an uncontested reorganization plan calling for full payment to all creditors. Larry Robert's debt to the corporation of $43,196.51 was offset by Barbara Robert's credit of $57,963.87. The difference was to be paid to Barbara Roberts after all other debts owed creditors were paid in full. The corporate debt of $2,241.50 owed to the law firm for prior unrelated legal fees was included in the payment plan as a general unsecured claim. No creditor or other party objected to either the payment plan or the law firm's representation.

On January 13, 1984, more than a year and a half after filing the bankruptcy petitions, the law firm submitted applications for payment of costs and fees which it incurred in representing the debtors. The law firm requested $10,208.18 for repre-

senting the corporation, $9,839.50 in fees and $368.68 in costs, and $5,335.30 for representing the individuals, $4,844.50 in fees and $490.80 in costs. These applications were not contested by any party to the filings, and the bankruptcy court found no deficiency therein. Rather, the bankruptcy court, upon its own inquiry, determined that an undisclosed conflict of interest resulted from the law firm representing the debtors in possession in both proceedings. Specifically, the court based this determination on the following facts:

1. The law firm had represented Larry and Barbara Roberts and Roberts, Inc. prior to filing the petitions in bankruptcy.

2. Roberts, Inc. owed the law firm at the time of the Chapter 11 filings approximately $2,250 in legal fees for services unrelated to the bankruptcy.

3. The Robertses were officers and directors of Roberts, Inc.

4. Larry Roberts owed Roberts, Inc. approximately $43,000 and Roberts, Inc. owed Barbara Roberts approximately $57,700.

*In re Roberts*, 46 B.R. 815, 819–20 (Bankr. D.Utah 1985). The court found that these facts created a conflict of interest so serious as to require the denial of all costs and fees to the firm.

The appeal requires a review of this determination. The appellant argues that the decision of the bankruptcy court erroneously finds that the dual representation is per se a conflict of interest. To allay this concern, the court will first address the "per se" issue. The court will then address 1) the law firm's statutory eligibility to represent the corporation and the Robertses, 2) the disclosure requirements, and 3) the standard of review applicable to the bankruptcy court's denial of fees and costs.

*Conflict of Interest in the Dual Representation*

The decision of the bankruptcy court is very detailed and thorough in its discussion of the ethical and legal factors that must be considered in conflict of interest cases. The bankruptcy court stated that due to the increasing number of conflict issues

coming before the court, the complexity of the law, the need to inform the practicing bar of the applicable standards, and the need to articulate the law of this jurisdiction, it undertook a thorough analysis of the conflict of interest law as it impacts on bankruptcy cases. *See In re Roberts*, 46 B.R. 815, 821 (Bankr.D.Utah 1985). It is clear that a great deal of time and thought was expended in making the legal analysis of the opinion as complete and accurate as possible.

As the bankruptcy court points out, the law of attorney conflicts of interest is complex. Equally complex is the application of the laws and standards of professional responsibility to the factual circumstances which combine to pose a potential conflict of interest in each case. Courts have observed that,

'When dealing with ethical principles, ... we cannot paint with broad strokes. The lines are fine and must be so marked. Guide posts can be established when virgin ground is being explored and the conclusion in a particular case can be reached only after a painstaking analysis of the facts and precise application of precedent.' We approach our task in this factually complex case conscious of this oft-repeated admonition and with the recognition that in deciding questions of professional ethics men of good will often differ in their conclusions.

*Fund of Funds, Ltd., v. Arthur Andersen & Co.*, 567 F.2d 225, 227 (2d Cir.1977) (quoting *United States v. Standard Oil Co.*, 136 F.Supp. 345, 367 (S.D.N.Y.1955)).

The bankruptcy court sets out the facts it considers critical in its opinion, *In re Roberts*, 46 B.R. at 819–20 (Bankr.D.Utah 1985). At pages 848–49, the bankruptcy court again refers to the same facts and concludes that they demonstrate a serious conflict of interest in the dual representation by the law firm.

This court agrees that the dual representation set forth by the bankruptcy court describes a relationship that may be potentially conflicting. While a potential conflict may justify further inquiry by the court, under the facts of this case, it does not by itself warrant a blanket denial of all legal fees incurred by the law firm in its representation. Dual representation must always be entered into with caution and close scrutiny by an attorney because of the danger that a conflict of interest exists or may arise. However, in order to arrive at such a remedy solely on conflict of interest theory, the court must determine that a conflict actually existed or, at least, the facts must strongly show the appearance of impropriety. In this case, the facts set forth in the bankruptcy court's decision do not per se reveal an actual conflict nor show the appearance of impropriety in the dual representation.

The Model Code of Professional Responsibility states that an attorney representing a corporation owes his allegiance to the interests of the corporation. Model Code of Professional Responsibility, EC 5–18. Ethical Consideration 5–18 goes on to acknowledge, however, that dual representation of a corporation and an officer, owner or other affiliated person is not necessarily inappropriate:

Occasionally a lawyer for an entity is requested by a stockholder, director, officer, employee, representative, or other person connected with the entity to represent him in an individual capacity; in such case the lawyer may serve the individual only if the lawyer is convinced that differing interests are not present.

MODEL CODE OF PROFESSIONAL RESPONSIBILITY, EC 5–18 (1980). *Accord* Alexander-Smith, Conflicts of Interest: Multiple Representations 19 n. 105 (ABA Center for Professional Responsibility 1983).

■ The law firm clearly engaged in simultaneous representation of a corporation and its principals in the separate Chapter 11 proceedings. This fact, without more, does not justify the conclusion that a conflict of interest existed in the representation, or even that there was an appearance of impropriety and neither does the debtor/creditor relationship between the Robertses and Roberts, Inc. In an ordinary bankruptcy involving typical debtor/creditor relationships, simultaneous rep-

resentation of the debtor and a creditor would constitute a conflict of interest. In this case, however, the debtors/creditors involved are a wholly-owned corporation on the one hand, and the two principal owners on the other. The debtors are reorganizing rather than liquidating their debts. Representation of parties involved in such a relationship may or may not create a conflict of interest. The realities of representing a small, closely-held entity mandate a closer look at the actual circumstances surrounding the representation. Dual representation of a bank and a potential borrower from the bank might very well represent an impermissible conflict of interest. On the other hand, a loan between a corporation and its sole owner will likely be effected with the use of a single attorney without any impropriety arising from the dual representation.

The facts identified by the bankruptcy court simply identify factors that *may*, in some circumstances, create a conflict of interest. This court finds that the facts of this case do not reveal a conflict of interest in the dual representation.

While a strict prohibition against the type of representation that occurred in this case may make it easier to enforce ethical standards, the economic realities of seeking legal advice must be considered:

> The importance of the societal interest in conflict-free representation might arguably support a blanket prohibition of the simultaneous representation of differing interests even if the client consented under DR 5–10(C). Forbidding consent, however, would ignore the important interest of the individual client in choosing his attorney and in controlling the progress of his litigation in light of his perceived self-interest. In many situations, independent representation provides few benefits to compensate for significant increases in legal expenses.

*Developments in the Law—Conflicts of Interest in the Legal Profession*, 94 Harv. L.Rev. 1244, 1303–04 (1981).

Not only is the financial burden in a case such as the one before this court an impor-tant consideration, but also the right to counsel of choice must be weighed:

> The knowing and intelligent exercise of the right to choose counsel, after full disclosure, will not be overturned by this court unless there is a convincing showing by the moving party of a real and substantial harm to the acquiescing party's interests.

*Melamed v. ITT Continental Baking Co.*, 592 F.2d 290, 293 (6th Cir.1979). *Aetna Casualty and Surety Co. v. United States*, 570 F.2d 1197, 1200–01 (4th Cir.), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978), (practical considerations of the case must be weighed, mere existence of multiple defendants does not inevitably create a conflict of interest).

Although this Court does not believe that the dual representation in this case constitutes an actual conflict or appearance of impropriety which outweighs the client's choice of counsel and the economic realities, the court faces other issues in the resolution of the appeal. Specifically, the court must examine whether the law firm was, by statute, eligible for employment, and whether disclosure requirements were satisfied.

*Eligibility for Employment*

The threshold question in ruling on the law firm's petition for fees and costs pursuant to § 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014 is whether the law firm was eligible for employment under applicable statutes. This inquiry is similar to, but not identical with, the issue of whether actual conflicts are present. The issue is whether the legislature has determined that certain relationships preclude employment independent of further inquiry.

In order to avoid the denial of fees after considerable time and effort has been expended by counsel and significant benefit derived by the clients, this issue should be addressed upon the filing of the initial application for employment pursuant to § 327. In this case, however, the bankruptcy court's approval of employment, which would normally lay this issue to rest, was vitiated by the law firm's affidavits

asserting that the statutory criteria were met without disclosing actual or potential conflicts. *See In re Estes,* 57 B.R. 158 (Bankr.N.D.Ala.1986). Consequently, the issue of statutory eligibility for employment in this case unfortunately arises in the context of petitions for interim fees and costs after a majority of the work has been completed and an apparently satisfactory result has been obtained. This timeliness problem is exacerbated by the policy consideration that a law firm which is statutorily ineligible for employment from the outset, which nonetheless asserts its eligibility and does not disclose apparent conflicts, should not be rewarded by relaxation of the eligibility standards. *In re Estes,* 57 B.R. 158 (Bankr.N.D.Ala.1986); *Matter of Arlan's Department Stores, Inc.,* 615 F.2d 925 (2d Cir.1979).

The court turns first to the law firm's statutory eligibility to represent Roberts, Inc. in its Chapter 11 bankruptcy. § 327(a) of the Bankruptcy Code, in conjunction with § 1107, empowers a debtor in possession to employ general counsel who meets the § 101(13) definition of a "disinterested person" and does not hold or represent an interest adverse to the estate. Attorneys who do not meet these criteria are statutorily disqualified to serve as general counsel for a debtor in possession in a Chapter 11 bankruptcy proceeding.

These criteria raise a serious question as to whether the debt owed by the corporation to the law firm for services rendered in a prior, unrelated matter disqualifies the law firm for the corporate employment. The record shows that this debt, which placed the law firm on the List of Fourteen Largest Creditors, was not waived and, although not specifically identified, was included in an aggregate figure for unsecured claims in the approved reorganization plan.

The law firm argues that § 1107(b) of the Bankruptcy Code allows its employment as counsel for the corporation despite its status as an unsecured creditor. § 1107 reads as follows:

Notwithstanding § 327(a) of this title, a person is not disqualified for employment under § 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.

The law firm relies on *In re Heatron, Inc.,* 5 B.R. 703 (Bankr.W.D.Mo.1980) which, interpreting the applicable code sections, states as follows:

The court concludes that an attorney who has represented the debtor prior to the filing of the bankruptcy proceeding, who assisted in the preparation of the petition and who is a major creditor, without more, does not have an interest adverse to the debtor.

*Id.* at 705. Accordingly, the law firm asks the court to reverse the denial of fees on the basis that no actual conflict of interest exists.

■ The court finds, however, that the weight of authority and the better-reasoned cases contradict *Heatron* in favor of the application of the clear mandate of the statutory eligibility criteria. A law firm which is a pre-petition creditor does not meet the "disinterested person" criteria set forth in 11 U.S.C. § 101(13) and, therefore, is disqualified from representing a Chapter 11 debtor in possession. *In re Estes,* 57 B.R. 158 (Bankr.N.D.Ala.1986), is illustrative and factually similar to the instant case. In *Estes,* the bankruptcy court revoked it's prior approval of a law firm's employment in a Chapter 11 reorganization. Approval was revoked because the firm had asserted, at the time approval was granted, that it was "disinterested" when, in fact, it was not. Upon discovery of a pre-petition debt owed by the debtor to counsel for services unrelated to the bankruptcy, approval was revoked and all compensation denied. The court denied compensation although the case appeared to be "on the verge of producing results which [were] pleasing to the major creditors, whose attorneys [preferred] that the court not 'rock the boat'." *Id.* at 161. The court reasoned as follows:

The role of the courts in maintaining the integrity of a legal system cannot be abdicated and left to the Bar....

As to statements by legal counsel of what a commendable job he has done for all parties, this misses the issue here which is not a pragmatic assessment of results produced by his representing the debtor in possession but whether he may do so under the terms of the statute.

The statements by debtor's counsel which invite the bankruptcy judge to examine cases in the "real world" in order to be confronted with the alleged "fact" that a debtor almost always owes a pre-petition debt to legal counsel, are blunted by the "fact" that in this case the prepetition debt is not related to the preparation and filing of the chapter 11 petition, for which the debtor paid to counsel a retainer of $5,000. Such statements merely indicate counsel's attitude toward the congressional restriction imposed by 11 U.S.C. § 327(a) which seems to be that of casually dealing with a prosaic and bothersome provision or nuisance regarding employment of professional persons by bankruptcy trustees or chapter 11 debtors in possession.

The statutory bar against counsel's representation of the debtor in this case is not an ambiguous provision of title 11, United States Code....

Part (13) of section 101 states that " 'disinterested person' means person that—(A) is not a creditor...." It further states: "and (E) does not have an interest materially adverse to the interest of the estate ..., by reason of any direct or indirect relationship to, connection with, or interest in the debtor ..., or for any other reason."

In § 101(9) "creditor" is stated to mean, among other things, an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." In Part (4) of that section, the meaning of the term "claim" is stated to include "right to payment." In Part (11) of that section, it is stated that " 'debt' means liability on a claim."

*Id.* at 162.

The *Estes* court then specifically addresses *Heatron:*

The opinion of the bankruptcy judge in *In re Heatron, Inc.,* appears to adopt a position that the sole inquiry under § 327(a) is whether an actual conflict of interests exists with regard to debtor's counsel, the debtor, and the estate. The opinion cites and rests its conclusion upon a number of decisions which deal with the question of whether a conflict of interests exists, but these decisions predate 11 U.S.C. § 327(a). This position appears to treat the requirement that legal counsel for the debtor be "disinterested persons" as a redundancy to the requirement that no conflict of interests exists. It is obvious that just the opposite would be true if there is any redundancy in the statute, because the term "disinterested persons" excludes a "creditor" whether or not there is any conflict of interests.

*Id.* at 162–63.

The court in *In re Patterson,* 53 B.R. 366 (Bankr.D.Neb.1985) reaches the same conclusion, citing *In the Matter of The Cropper Company, Inc.,* 35 B.R. 625, (Bankr.M.D.Ga.1983) and *B.E.T. Genetics,* 35 B.R. 269, (Bankr.E.D.Calif.1983), which it finds more persuasive than *Heatron,* the only case found which allowed a pre-petition creditor to serve as counsel to a Chapter 11 debtor in possession. The court in *Patterson* also states as follows:

The commentators are very clear on the question. *2 Collier on Bankruptcy,* § 327.03, 15th Ed., 1980, in the discussion of § 327(c), states, at footnote 36:

"If an attorney is a creditor of the debtor, the attorney is not eligible for employment by the trustee by virtue of §§ 101(13) and 327(e)."

*1 Norton, Bankruptcy Law and Practice* (1981) at § 13.26, Part 13, page 41, states

"But that is not to say that § 1107(b) blesses the representation in all events of a debtor-in-possession by its pre-bankruptcy attorney. There may, and indeed frequently are, other disqualifying factors. For example, the attorney engaged by a debtor-in-possession must be 'disinterested'. Section

1107(b) does not excuse the attorney from compliance with the requirement that the attorney be a disinterested person. The only exception provided by § 1107(b) is disqualification arising from pre-bankruptcy employment. Thus, if the attorney is owed a lot of money by the debtor-in-possession, then the attorney's creditor status renders the attorney not a 'disinterested person' which, under the definition of Code § 101(13), includes a creditor."

Accordingly, this court concludes that the law firm was statutorily ineligible for employment by Roberts, Inc. in it's Chapter 11 proceeding.

The court now turns to the issue of whether the law firm was statutorily eligible to represent the Robertses in their individual bankruptcy. Former § 327(c) of the Bankruptcy Code addresses the law firm's eligibility to simultaneously represent Barbara and Larry Roberts and Roberts, Inc. § 327(c) was amended effective October 8, 1984, and therefore does not apply to the petitions in this case. It stated, prior to 1984 amendments, as follows:

(c) In cases under Chapter 7 or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, *but may not, while employed by the trustee, represent, in connection with the case, a creditor.* (emphasis added)

Under § 1107(a), a debtor-in-possession is subject to "any limitations placed on a trustee" under Chapter 11. Accordingly, a debtor in possession is not statutorily empowered to hire counsel who simultaneously represents a creditor in connection with the case.

A strict application of § 327(c) to the facts of this case would preclude the simultaneous representation of the Robertses and Roberts, Inc., regardless of actual conflicts. Larry Roberts, as a debtor in possession, is not empowered to hire the firm while, in connection with the case, it also represents his creditor, Roberts, Inc. The law firm, while employed by Roberts, Inc. as a debtor in possession, is also ineligible to represent Barbara Roberts in connection with the corporate bankruptcy.

Although the language of former § 327(c) is clear, such a rigid application of its restrictions seems counterproductive under the facts of this case. As discussed earlier in this opinion, the court finds no per se conflict of interest or appearance of impropriety in the simultaneous representation. There is a unity of interest between the Robertses and their family business as they attempt to reorganize their debts, and the debts between the two are not in dispute nor was any priority requested or obtained relative thereto. The law firm, however, faces an uphill struggle to overcome the clear provisions of § 327(c).

A review of pre-code statutes and rules, together with recent amendments to § 327(c), lend historical perspective to the application of the pre-amendment terms of § 327(c). Precode § 44(c) of the Bankruptcy Act and former Bankruptcy Rule 215(c) did not preclude simultaneous representation of a debtor and a creditor. § 44(c) provided that, "[A]n attorney shall not be disqualified to act as an attorney for the ... trustee by reason of his representation of a general creditor." Former Bankruptcy Rule 215(c) reiterated the same position. The Advisory Committee note to Rule 215 recognized the position taken by this court that the interests of the debtor and an unsecured, non-priority creditor, when the validity or amount of the debt is not in dispute, are not necessarily adverse:

*Subdivision (c)*, like § 44(c) of the Act, rests on the premise that the interests of all general creditors of a bankrupt are identical. Thus an attorney who has previously represented a general creditor, or is representing him in connection with the bankruptcy of his client's debtor, is not ordinarily subject to any conflict of interest. The term "general creditor" is used in the same sense here as in § 44(c), *viz.*, a creditor without security and without any priority under § 64 of the Act. Analysis of H.R. 12889. 74th Cong. 2d Sess. 158 (1936). Of course, if there is a question as to the validity or the amount of a general creditor's claim, his attorney

would be subject to a disqualifying interest. See 2 *Collier* 1681 n. 5 (1962).

The terms of pre-amendment § 327(c), precluding any simultaneous representation, were found unworkable and were retracted by Congress in 1984. The statute returned to a more flexible, reasonable position. The 1984 amendments do not preclude simultaneous representation of a debtor and a creditor unless another creditor objects and an actual conflict exists. § 327(c), as amended, states:

> In a case under Chapter 7 or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor, in which case the court shall disapprove such employment if there is an actual conflict of interest.

Nonetheless, these bankruptcy petitions were filed during that period of time after the passage of the Bankruptcy Code, and prior to the 1984 amendments, when simultaneous representation was explicitly precluded by statute. The court in *In Re Thompson*, 54 B.R. 311 (Bankr.N.D.Ohio 1985), interpreting the pre-amendment version of § 327(c), states:

> The concurrent representation of the trustee and a creditor, irrespective of whether or not an actual conflict of interest exists, is specifically prohibited by subsection 327(c). 2 *Collier on Bankruptcy*, para. 327.03[4] (15th ed. 1985) . . .

*Id.* at 315.

The law firm's eligibility for employment by the Robertses, while simultaneously representing their corporation, was at best questionable. Because of the recent amendments to § 327(c), the court sees no need to take a definite stand on the rigid application of the pre-amendment statute. Suffice it to say that the 1984 amendment to § 327(c) improves the law. Also, for purposes of resolving the propriety of the bankruptcy court's denial of fees and costs in light of non-disclosure of apparent conflicts, a determination that the employment was questionable under the terms of § 327(c) is sufficient. The potential conflict should have been apparent to the law firm upon reading the statute.

*Disclosure of Potential Conflicts of Interest*

■ Attorneys who request court approval of employment pursuant to § 327 of the Bankruptcy Code owe a duty to disclose actual or potential conflicts of interest which may bear upon their qualifications as set forth therein. Specifically, actual or potential conflicts which bear upon whether an attorney "holds or represents an interest adverse to the estate" or whether an attorney is a "disinterested person" should be disclosed.

> "Attorneys who seek appointment . . . owe the duty of complete disclosure of all facts bearing upon their eligibility for such appointment. If that duty is neglected, however innocently, surely they should stand no better than if it had been performed . . ."

*Matter of Arlan's Department Stores, Inc.*, 615 F.2d 925, 933, (2d Cir.1979) (quoting *In re Rogers-Pyatt Shellac Co.*, 51 F.2d 988 (2d Cir.1931)); *In re Estes*, 57 B.R. 158 (Bankr.N.D.Ala.1986).

Appellant argues that his duty to disclose was satisfied because the law firm was listed on Roberts, Inc.'s List of Fourteen Largest Unsecured Creditors and because the two cases were filed simultaneously. This court rejects this argument and concurs with the bankruptcy court's determination that "it has no duty to search the file to determine for itself that a prospective attorney is not involved in actual or potential conflicts of interest. It is an attorney's duty to so inform the court." *In re Roberts*, 46 B.R. at 839 (citing *In re Career Concepts fka United Personnel, Inc.*, 76 B.R. 830, —— (Bankr.D.Utah June 13, 1983) (J. Clark); *In re American Tierra*, No. 81M–03073, Transcript of Ruling at 12–13, (Bankr.D.Utah June 8, 1983) (J. Mabey); *In re B.E.T. Genetics, Inc.*, 35 B.R. 269 at 273 (Bankr.E.D.Cal.1983); and *In re Coastal Equities Inc.*, 39 B.R. 304 at 308 (Bankr.S.D.Cal.1984)). More specifically, it is not the duty of the bankruptcy judge to fer-

ret out the incorrectness of statements in the debtor's application to employ counsel. *In re Estes*, 57 B.R. 158, 161 (Bankr.N. D.Ala.1986).

To the extent actual or potential conflicts are not disclosed, the court is prevented from exercising its statutory obligation to rule on the propriety of the employment. The importance of this secondary protection against conflicts of interest should not be minimized. Of course, the primary protection continues to be each attorney's resolve to fully disclose potential conflicts to the clients and to accept employment only when actual or potential conflicts are mitigated under the law. Accordingly, counsel should not petition the court for employment unless counsel conscientiously believes that there are no conflicts or that potential conflicts are outweighed by other legally cognizable factors. In situations where counsel is aware of apparent conflicts which counsel believes are outweighed by other factors, the conflicts must be disclosed. The court then can exercise its independent judgment. The decision concerning the propriety of employment should not be left exclusively with counsel, whose judgment may be clouded by the benefits of the potential employment. The exercise of the court's independent and informed discretion is an important protection to clients who may not be sophisticated in assessing conflicts of interest and to the court system which has an interest in avoiding even the appearance of impropriety.

In this case, the clients were not afforded this protection because the law firm's affidavits submitted with applications for employment failed to disclose any actual or potential conflicts and asserted that the criteria provided in § 327 of the Bankruptcy Code were satisfied. In effect, the judgment of the law firm was substituted for that of the court.

■ Prior to the court's approval of the employment in each case, the law firm had a duty to disclose each of the apparent conflicts subsequently discovered by the bankruptcy judge. Specifically, the law firm had a duty to disclose that it had previously represented the Robertses and Roberts, Inc., that the Robertses were officers, directors, and shareholders of Roberts, Inc., that the law firm was simultaneously representing both, and that Larry Roberts was a debtor and Barbara Roberts a creditor of the corporation. This duty is supported by the language of § 327(a), in conjunction with § 327(c), which clearly brings into question the law firm's eligibility to simultaneously represent the Robertses and Roberts, Inc., as previously discussed.

In addition, in light of the clear statutory language that a pre-petition creditor does not satisfy the "disinterested person" criteria, the law firm should have disclosed the debt owed to it by the corporation, made its arguments, and allowed the bankruptcy judge to apply the law.

The law firm argues that § 1107 of the Bankruptcy Code and the *Heatron* case, discussed above, relieved the law firm of its duty to disclose the pre-petition debt. This court does not read *Heatron* or § 1107 to diminish counsel's duty to disclose apparent conflicts of interest in conjunction with its § 327 application for employment. The decision whether to apply the analysis of *Heatron* and other cases is by statute ultimately left to the bankruptcy judge who must, under § 327(a), rule on the propriety of the employment. In *Heatron*, the court was ruling on an application of employment apparently pursuant to disclosure of potential conflict. In this case no such disclosure was made. Although, in equity, the law firm's reliance on *Heatron* may mitigate the nondisclosure of the debt, the law firm was nonetheless obligated to disclose.

The law firm also argues that its affidavit stating that it is disinterested and does not hold or represent interests adverse to the estate constitutes a waiver of the debt owed by the corporation to the law firm. Accordingly, the law firm contends it is disinterested. While the affidavit may waive the law firm's right to collect the debt, it does not substitute for an affirmative waiver for purposes of removing the requirement to disclose apparent conflicts

bearing on the law firm's eligibility for employment.

Bankruptcy Rule 2014(a), effective August 1, 1983 after the filing of the petitions for employment in this case, places on the trustee or committee the responsibility for disclosing potential conflicts to the court and for making application for employment:

> An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professional persons pursuant to § 327 or § 1103 of the Code shall be made only on showing the necessity for the employment, the name of the person to be employed, the reasons for his selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants.

This rule does not relieve prospective counsel from the duty to fully disclose potential conflicts to the trustee, the debtor in possession who stands in the shoes of the trustee, or the committee. Nor does it eliminate the ultimate concern that, to the extent potential conflicts are not disclosed, the judge is impaired in his decision relative to approval of the employment.

There is considerable precedent establishing that nondisclosure of potential conflicts alone justifies the bankruptcy court's exercise of discretion to deny all fees. *In re Thompson*, 54 B.R. 311, 316 (Bankr.N.D. Ohio 1985); *In re Guy Apple Masonry Contractor, Inc.*, 45 B.R. 160, 163 (Bankr. D.Ariz.1984). The law, however, does not require such a result. Rather, the court favors the flexibility afforded by the standard stated in *In re Watson Seafood & Poultry Company, Inc.*, 40 B.R. 436 (Bankr.E.D.N.C.1984):

> [B]ecause a bankruptcy court is a court of equity (*Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed. 197 (1966), the bankruptcy judge should not be bound by a completely inflexible rule mandating denial of all fees in all cases.

The general rule should be that all fees are denied when a conflict is present, but the court should have the ability to deviate from that rule in those cases where the need for attorney discipline is outweighed by the equities of the case. This flexibility is supported by 11 U.S.C. 328(c), which says that the court "may" (rather than "shall") deny compensation when counsel represents an interest adverse to the interest of the estate.

■ Although, as stated, this standard applies when a conflict is present, the need for flexibility is even more apparent when dealing with non-disclosure of potential conflicts. Accordingly, where the equities outweigh the need for attorney discipline for failure to disclose potential conflicts, the law does not require the denial of fees and costs.

*Conclusion*

Generally, the bankruptcy judge has broad discretion to award or deny fees and costs. Therefore the bankruptcy judge's decision may not be overturned absent an abuse of discretion. *Matter of First Colonial Corporation of America*, 544 F.2d 1291, 1298 (5th Cir.1977) *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977) citing *In re Bemporad Carpet Mills, Inc.*, 434 F.2d at 989; *Massachusetts Mutual Life Insurance Co. v. Brock*, 405 F.2d at 432; *Calhoun v. Hertwig*, 363 F.2d 257, 261 (5th Cir.1966), *cert. denied*, 386 U.S. 966, 87 S.Ct. 1047, 18 L.Ed.2d 116 (1967); *See* 3A J. Moore & L. King, Collier on Bankruptcy Paragraph 62.12[4] (14th ed. 1975).

The law firm, however, contends that the determination of whether an actual conflict of interest exists under the particular facts of this case is a legal conclusion subject to a different standard of review. The court agrees. It is not in a disadvantaged position when only legal conclusions are in dispute and not the facts. The court, therefore, may review de novo the legal conclusions. *See* Rule 8013, Bankruptcy Rules; *In re American Mariner Industries, Inc.*, 734 F.2d 426, 429 (9th Cir.1984).

As previously discussed, this court finds no actual conflict or appearance of impropriety in the dual representation. The bankruptcy court based its denial of fees and costs on a contrary legal conclusion that the law firm "was involved in a multiplicity of conflicts of interest". *In re Roberts*, 46 B.R. 815 at 848 (Bankr.D.Utah 1985). Because 1) the court disagrees with this fundamental legal conclusion upon which the denial of fees was based, 2) the facts of this case are not in dispute, and 3) no evidentiary hearing was held to consider the propriety of the dual representation, the court reviews de novo the denial of fees and costs.

■ The court's determination that no actual conflict or appearance of impropriety existed in the dual representation does not alter the resolution of the request for fees and costs relative to the representation of the corporation. The law firm, as a pre-petition creditor of the corporation, did not qualify as a "disinterested person" and therefore was statutorily ineligible for employment. § 328(c) specifically allows the court to deny attorney's fees and costs *at any time* during employment that counsel is not a disinterested person or holds or represents an interest adverse to the estate. Although § 328(c) does not mandate the denial of fees, the clarity of the statutory ineligibility and the assertion by affidavit that the law firm was disinterested, when in fact it was not, warrants the denial of fees and costs in the representation of Roberts, Inc.

■ As to the petition for fees and costs relative to the individual representation of Larry and Barbara Roberts, the court believes the need for attorney discipline is outweighed by the equities of the case. The court has concluded that the dual representation in this case does not establish an actual conflict nor strongly show the appearance of impropriety. § 327(c) of the Bankruptcy Code, as amended in 1984, would not preclude the simultaneous representation without an objection and a finding of an actual conflict. The need for attorney discipline is mitigated by the denial of all fees and costs relative to the corporate representation and other factors. The reorganization plan developed by the law firm calls for payment to all creditors of all amounts owed to them. No creditor or other party to the action has complained of the alleged conflicts of interest. The facts considered by the bankruptcy court do not suggest that the law firm's representation was otherwise less than competent. The court was apparently influenced by misinformation that the law firm had been found to be in violation of conflict of interest laws on two occasions prior to this representation. *See In re Roberts*, 46 B.R. 815 at 848, 850 (Bankr.D.Utah 1985). In denying any compensation the court stated that "[t]his trend the Court cannot allow". *Id.* at 850. A close examination of the facts reveals, however, that the two prior conflict of interest decisions against the law firm were made after the dual representation of the Robertses and Roberts, Inc. was well under way.

In summary, the court concurs with the bankruptcy court's statement of the law to the extent it sets forth factors which must be considered in assessing potential conflicts of interests relative to bankruptcy employment. However, the court modifies, in part, the application of these legal principles to the particular facts of this case. The court, on the basis of statutory ineligibility and inadequate disclosure, affirms the bankruptcy court's denial of attorney's fees and costs relative to the corporate representation. However, relative to the individual representation of the Robertses, the court finds that the need for attorney discipline is outweighed by the equities of this case and reverses the denial of attorney's fees in the amount of $4,844.50 and costs in the amount of $490.80. Accordingly, the court remands this case for further proceedings consistent with this opinion.