**In re KLIEGL BROS. UNIVERSAL ELECTRIC STAGE LIGHTING CO., INC., Debtor.**

**Bankruptcy No. 191–13001–352.**

United States Bankruptcy Court, E.D. New York.

Dec. 28, 1995.

**875**

Donovan, Leisure, Newton & Irvine by Peter Lubitz, New York City, for Debtor.

Pfaltz & Woller, P.C. by James A. Woller, Summit, New Jersey, for Creditor.

United States Trustee by Douglas Spelfogel, Garden City, New York.

Kurtzman & Haspel by Joseph J. Haspel, Spring Valley, New York, for Postconfirmation Debtor.

Marc Stuart Goldberg, Marc Stuart Goldberg & Associates, P.C., New York City, Operating Chapter 11 Trustee.

MARVIN A. HOLLAND, Bankruptcy Judge:

Before this Court is the final application (hereinafter, "Final Application") of Donovan, Leisure, Newton & Irvine (hereinafter, "Applicant" or "Donovan"), former counsel to the Debtor-in-Possession, Kliegl Bros. Universal Electric Stage Lighting Co., Inc. (hereinafter, "Kliegl Bros." or the "Debtor"), for allowance of compensation and reimbursement of expenses. Objections to the Final Application have been filed by the United States Trustee and James A. Woller, Esq., a member of the firm of Pfaltz & Woller, P.C., an unsecured creditor in this case.

For the reasons that follow, we award the full amount requested.

### BACKGROUND

On June 4, 1990, Kliegl Bros. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and the case was assigned to The Honorable Dorothy Eisenberg, United States Bankruptcy Judge for the Eastern District of New York.

Simultaneously with the filing, the Debtor made an *ex-parte* application for the retention of Donovan as its counsel in this case, which stated in pertinent part that "Donovan did not have any connection with the Debtor, its creditors or any other party in interest ... except as may be stated in the affidavit of A. Peter Lubitz ... annexed hereto." Mr. Lubitz (hereinafter, "Lubitz") was of counsel to the Donovan firm, and is the attorney who primarily handled this case for Donovan. Lubitz's affidavit accompanying the retention application states that "[Donovan] does not represent any interests adverse to the estate herein in the matters upon which it is to be engaged nor has it, to its knowledge, previously represented and [sic] interested party herein in any capacity. The firm in other matters represents the McChristian Companies which in this case has agreed to provided [sic] post-petition financing and management services to Debtor ...".

By order dated June 18, 1990, Donovan's retention was approved *nunc pro tunc* to May 29, 1990 pursuant to 11 U.S.C. § 327 and Fed.R.Bankr.P. 2014. The order contained the subjoined "No Objection" of the United States Trustee.

Donovan has sought no prior allowance of compensation in this case, nor has it received any retainer herein. Donovan now seeks compensation in the amount of $141,692.75 and $7,679.31 as reimbursement of expenses for services performed by Donovan from May 29, 1990 through and including July 31, 1992.

The United States Trustee's objection asserts that compensation for Donovan should be denied entirely predicated on Donovan's alleged dual representation in this case of the Debtor and The McChristian Companies (hereinafter, "TMC") and the alleged impermissible conflict of interest that such dual representation caused. In addition, the objection asserts that the aggregate fee award requested is "unreasonable, excessive and duplicative." The objection filed on behalf of

Pfaltz & Woller, P.C. states only that "[w]e believe that the fees for legal professional services are in excess of the amount that should be allowed."

Prior to the filing of the petition, John H. Kliegl, then the Debtor's principal shareholder and president, with approval of the Debtor's board of directors and Joseph McChristian (hereinafter, "McChristian"), on behalf of TMC entered into a letter agreement dated May 30, 1990 pursuant to which TMC would provide post-petition credit and cash to the Debtor, and McChristian would become the president of the Debtor and assume its day-to-day management. According to an affidavit of Lubitz, sworn to on December 11, 1992, "[s]ubsequent to the negotiation of the terms of the May 30 letter agreement by Messrs. Kliegl and McChristian, [Donovan] did prepare a draft, based upon the May 30 letter agreement, of what ultimately became a more formal loan agreement."

By motion dated June 4, 1990, the Debtor sought an order pursuant to 11 U.S.C. § 364(c)(1) and (d)(1) authorizing it to obtain credit in accordance generally with the terms set forth in the May 30 letter agreement. This agreement provided in pertinent part that TMC would lend $250,000 to the Debtor to be evidenced by interest bearing notes convertible at TMC's discretion into common stock of the Debtor. Under the credit agreement, the Debtor's obligations to TMC were to constitute super-priority claims secured by a lien upon all assets of the Debtor pursuant to 11 U.S.C. § 364(c)(1) and (d)(1) with priority over any and all administrative claims other than those of professionals retained in this case.

A hearing on the motion was held and by order dated June 8, 1990, the Debtor was authorized to borrow from TMC $100,000 on an interim basis pending a final hearing on the motion. A final financing hearing was held on July 10, 1990, and after the close of testimony, the hearing was adjourned by the court to July 31, 1990. By order dated Sep-

tember 10, 1990, a final order authorizing the financing by TMC was signed by the court.[1] Thereafter, following a hearing on January 29, 1991, the court signed an interim order authorizing increased financing in the amount of $450,000. According to the Final Application, "[t]hereafter, the final hearing [on the increased borrowing] was adjourned from time to time and it subsequently became clear that the Debtor would not then require the marginal additional amounts that would have been available and such hearing was thereafter not required to be held." According to the docket, the contents of which we take judicial notice, a hearing on the increased borrowing was scheduled for June 12, 1991. No one appeared and the matter was "Marked Off—So Ordered".

On or about May 10, 1991, John H. Kliegl, in his individual capacity, retained the law firm of which Judge Eisenberg had formerly been a member. Judge Eisenberg then recused herself, and the case was reassigned to the undersigned.

On May 29, 1991, on motion of the United States Trustee, this Court signed an order directing the appointment of an operating trustee after a hearing held on May 16, 1991, at which this Court found that the Debtor had failed to file operating reports on a timely basis and failed to segregate and remit to the appropriate taxing authorities monies withheld on account of taxes and F.I.C.A. from employee wages.

Thereafter, a disclosure statement filed by the operating trustee was approved, and a Chapter 11 plan filed by the operating trustee was confirmed.

## DECISION

The United States Trustee's objection to the awarding of fees to Donovan is based on 11 U.S.C. § 327 and Fed.R.Bankr.P. 2014, and states in pertinent part:

> The applicantion [sic] for compensation submitted by [Donovan] should be denied entirely because: (i) the representation is

---

1. From the outset, the Internal Revenue Service (hereinafter, "IRS") objected to the proposed financing agreement. In substance, the IRS alleged that the post-petition financing would deprive it of the adequate protection to which it

alleged it was entitled with respect to various tax liens. At the July 31, 1990 hearing, the court was advised that an agreement in principle had been reached which resolved the IRS' objections.

irrevocably marred by a conflict of interest arising from Donovan's simultaneous representation of the debtor and the debtor's funder/largest creditor, The McChristian Companies ("McChristian"), in this case in violation of Bankruptcy Code Section 327; (ii) Donovan violated the disclosure mandate of Bankruptcy Rule 2014 by virtue of its inadequate and untimely disclosure of such conflict; and (iii) the aggregate fee is otherwise unreasonable, excessive and duplicative.

Section 327 of the Bankruptcy Code deals with employment of professional persons and sets out the requirements for retention of such persons. Pursuant to 11 U.S.C. § 327(a), a debtor-in-possession, subject to the court's approval, may employ "one or more attorneys ... that does not hold or represent an interest adverse to the estate, and that are disinterested persons." In addition, 11 U.S.C. § 327(c) provides:

> In a case under chapter 7, 11 or 12 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is an objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

 Thus, Donovan's employment was proper so long as: (1) it did not hold or represent an interest adverse to the estate and was a disinterested person at the time of it's retention, and (2) if it was employed by or represented a creditor, so long as there was either: (a) no objection by another creditor, or (b) a creditor's objection without a finding of actual conflict of interest. Donovan's alleged representation of TMC as a creditor of the Debtor at the time of its retention, without more, was not sufficient to disqualify Donovan from representing the Debtor.

However, the United States Trustee's reliance on 11 U.S.C. § 327 is misplaced as that section is concerned solely with the retention of professional persons. Donovan's retention order was signed shortly after the commencement of this case, and said order has never been appealed. No party has moved to disqualify Donovan, and Donovan does not represent the post-confirmation Debtor. The sole issue now before us concerns compensation for services rendered by Donovan and therefore, 11 U.S.C. § 327 is inapplicable to the present proceeding. Whether Donovan's retention should have been authorized was an issue to be raised by the United States Trustee at the time of the application for retention, or at the earliest possible time after the discovery of grounds, if indeed such grounds had existed. It is not an issue first to be raised in opposition to a final application for compensation and reimbursement of expenses after counsel performed years of legal services with the full knowledge of the United States Trustee.

The United States Trustee's objections concerning Donovan's alleged conflict of interest are addressed by 11 U.S.C. § 328(c), which provides in pertinent part:

> Except as provided in section 327(c) ... of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 ... if, at any time during such professional person's employment under section 327 ... such person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate.

 While identical in significant part to 11 U.S.C. § 327(a), 11 U.S.C. § 328(c) deals with compensation; it provides the authority to deny professional persons compensation if during the course of employment, such person: (a) was not a disinterested person, (b) held an interest adverse to the interest of the estate, or (c) represented an interest adverse to the interest of the estate.

Section 101(14) of the Bankruptcy Code provides five requirements to be a "disinterested person".[2] There is no suggestion that

---

2. 11 U.S.C. § 101(14) provides:
 (14) "disinterested person" means person that—
 (A) is not a creditor, an equity security holder, or an insider,

(B) is not and was not an investment banker for any outstanding security of the debtor,
(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debt-

Donovan failed to meet any of the first four requirements of disinterestedness in 11 U.S.C. § 101(14). The only possibly relevant element is 11 U.S.C. § 101(14)(E) which requires that a disinterested person not have "an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ... or for any other reason."

There is nothing in the record to suggest that Donovan had "an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, *by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ...*". 11 U.S.C. § 101(14)(E) (emphasis added). However, the "catch-all" language "or for any other reason", requires us to determine whether Donovan had a materially adverse [3] interest for reasons other than the reasons specifically set forth.

Many courts have noted that the "materially adverse interest" language in 11 U.S.C. § 101(14)(E) overlaps the requirement under 11 U.S.C. § 328(c) that a professional person not hold an interest adverse to the estate. *See In re Diamond Mortg. Corp. of Illinois,* 135 B.R. 78, 93 (Bankr.N.D.Ill.1990) (citations omitted) ("Several courts have melded

parts of [the] three-pronged test [in 11 U.S.C. § 328(c)], holding that 'the disinterested person and adverse interest tests for employment of professional persons ... overlap in ... the definition of "disinterested person" ...'"); *BH & P, Inc.,* 949 F.2d 1300 (3rd Cir.1991) ("There is, indisputably, some overlap between the section 327(a) standard and section 101(14)(E) disinterest requirement."); *In re Martin,* 817 F.2d 175, 179 n. 4 (1st Cir.1987) ("something of a redundancy" exists between sections 1014 and 327(a)).[4]

▪ Accordingly, to avoid denial of compensation under 11 U.S.C. § 328(c), a professional person must *at a minimum* hold no interest adverse to the estate during such person's employment in the case. In addition, because 11 U.S.C. § 328(c) incorporates 11 U.S.C. § 101(14), the professional person must not hold an interest materially adverse to the interest of creditors or equity security holders. Finally, to avoid 11 U.S.C. § 328(c)'s penalty, the professional person must not represent an interest adverse to the estate.

▪ The terms "interest materially adverse" in 11 U.S.C. § 101(14)(E) and "interest adverse" in 11 U.S.C. § 328(c) are not defined in the Bankruptcy Code.[5] However,

---

or, or an attorney for such investment banker in connection with the offer, sale, or issuance of a security of the debtor,

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph, and

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason.

3. It has been held that 11 U.S.C. § 101(14)(E) "seems broad enough to include anyone who in the slightest degree might have some interest or relationship that would even faintly color the independent and impartial attitude required by the United States Bankruptcy Code and the Federal Rules of Bankruptcy Procedure." *In re Star Broadcasting, Inc.,* 81 B.R. 835, 838 (Bankr. D.N.J.1988) (citation omitted). However, given the fact that 11 U.S.C. § 101(14)(E) proscribes only those interests that are "materially" adverse

to the estate, any class of creditors or equity security holders, we believe that such a holding is overly broad, and conflicts with the language of the statute and, therefore, we decline to follow this holding.

4. Although there is significant overlap between the disinterested person requirement and the requirement that a professional person not hold an interest adverse to the estate, there are some differences between the two. First, a professional person who does not hold an interest adverse to the estate can nevertheless fail the disinterested person requirement if such person held an interest materially adverse to "any class of creditors or equity security holders". Second, a professional person may satisfy the disinterested person requirement because such person does not hold an interest "materially" adverse to the estate, but nevertheless holds an interest adverse to the estate without such interest being "materially" adverse to the estate.

5. Nor does the Bankruptcy Code define the term "interest." However, it has been held that the term is "primarily used ... in its broad, commercial and economic sense to mean any proper-

"holding an interest adverse to the estate" has been judicially defined as follows:

(1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant, or

(2) to possess a predisposition under circumstances that render such a bias against the estate.[6]

*In re Roberts*, 46 B.R. 815, 826 (Bankr. D.Utah 1985), *aff'd* in relevent part and *rev'd* and *remanded* in part on other grounds, 75 B.R. 402 (Bankr.D.Utah 1987).[7]

■ There is no evidence to suggest that Donovan possessed or asserted an economic interest in this case on its own behalf. On the contrary, the record indicates that Donovan had no dealings with the Debtor prior to its representation of the Debtor in this case, and that Donovan was not a creditor of the Debtor. Accordingly, Donovan did not hold an adverse interest to the estate and therefore, could not hold an interest *materially* adverse to an interest of the estate.

With respect to any claimed predisposition under circumstances which may have created a bias against the estate, its creditors, or its equity security holders, there is nothing in the record to support such a finding. The United States Trustee alleges that Donovan's efforts in this case were solely on behalf of McChristian and TMC, and that Donovan had a bias against the estate and/or other creditors of the Debtor. We are unable to so find.

The basis of the United States Trustee's allegations is Donovan's admitted past representation of TMC and their alleged representation of TMC herein. It is significant that throughout this case, all of the parties, as well as Judge Eisenberg, were well aware that Donovan had admitted representing TMC in the past, and that pursuant to the financing agreement, McChristian would become the president and possibly the principal of the Debtor, in addition to his role in TMC. At no time did any party object to Donovan's retention or move to disqualify Donovan pursuant to 11 U.S.C. § 327(a). Given the knowledge of the facts set forth above and the failure of any party to move to disqualify Donovan, before we can find that Donovan held an interest materially adverse to the estate, its creditors, or its equity security holders, or that it held an interest adverse to the estate on the basis of an alleged bias, we must be assured that the record supports such a finding. Our examination of the record fails to supply such assurance.

ty (real or personal), money, credit, service, benefit, entitlement, right, expectation, claim, or value in any form, whether vested or unvested, contingent or noncontingent, liquidated or unliquidated, disputed or undisputed, to which the divided or undivided right or title of any holder thereof may attach under any foreign or domestic constitution, statute, ordinance, contract, or custom." *In re Roberts*, 46 B.R. 815, 826 (Bankr.D.Utah 1985), *aff'd* in relevant part and *rev'd* and *remanded* in part on other grounds, 75 B.R. 402 ·(Bankr.D.Utah 1987). Moreover, the *Roberts* court held that in the context of 11 U.S.C. § 327(a) "interest" might also mean "the predisposition that is ordinarily created by family ties, friendship, and by fiduciary or official responsibilities." *Id.*

6. This judicially-created definition of "holding an interest adverse to the estate" is also applicable in determining whether Donovan held an interest materially adverse to the estate, its creditors, or its equity security holders for purposes of 11 U.S.C. § 101(14)(E). If in applying the definition set forth above, Donovan did not hold an interest adverse to the estate, it would necessari-

ly follow that Donovan did not hold an interest materially adverse to the estate. Moreover, by replacing the word "estate" in the second part of the definition with the words "any class of creditors or equity security holders", we can state that if Donovan did not "possess a predisposition under circumstances that render such a bias against [any class of creditors or equity security holders]", then Donovan did not hold an interest materially adverse to the interests of such parties. Of course, the reverse of these statements is not necessarily true. That is, even if Donovan is found to have held an adverse interest against either the estate or any class of creditors or equity security holders, it does not necessarily follow that Donovan held an interest "materially" adverse to these entities.

7. This definition/interpretation has been quoted widely. *See, e.g., In re Diamond Mortg. Corp. of Illinois*, 135 B.R. 78, 94–5 (Bankr.N.D.Ill.1990); *In re Al Gelato Continental Desserts, Inc.*, 99 B.R. 404, 407 (Bankr.N.D.Ill.1989); *In re Lee*, 94 B.R. 172, 177 (Bankr.C.D.Cal.1988); *In re Glenn Electric Sales Corp.*, 89 B.R. 410, 413 (Bankr.D.N.J. 1988).

The only evidence submitted to this Court on the objections to the Final Application are Donovan's time sheets, from which we are asked to infer that its true client was TMC. Although the time sheets support an inference that Donovan may have represented or provided advice to TMC throughout this case, we have not been provided with facts from which we could conclude that Donovan had a predisposition which under the circumstances created a bias on its part against the estate, its creditors, or its equity security holders. Rather, the record indicates that after the filing of the Debtor's petition, the only source of financing that it was able to garner was its deal with TMC, a deal that called for McChristian to assume operating control of the Debtor, and that gave TMC an option to convert its debt into equity. With the knowledge of the creditor body and the United States Trustee, that financing received the judicial blessings of Judge Eisenberg, and Donovan continued its uninterrupted representation of the Debtor without objection of anyone.

We understand the lack of enthusiasm with which this turn of events was greeted by original management of the Debtor, even though there shortly would have been no viable Debtor to manage had the agreement not been concluded. However, Donovan was not representing the Debtor's management; it represented the Debtor notwithstanding its change of management. As a result of Donovan's efforts, the Debtor survived as a viable entity. We see no reason to deny, on the basis of unsupported allegations, that which Donovan has earned.

■ The next issue therefore, is whether Donovan represented an interest adverse to the estate. "To 'represent an adverse interest' means to serve as agent or attorney for any individual or entity holding such an ad-

verse interest." *In re Roberts*, 46 B.R. at 827.

■ Our research has revealed that in almost all of the cases which have addressed this aspect of 11 U.S.C. §§ 327 and 328(c), it was undisputed that the professional person involved represented two parties in the particular case. Here we have such an allegation denied by Donovan.

However, even assuming *arguendo* that while representing the Debtor Donovan had also represented TMC and/or McChristian, the record is devoid of any facts from which we could conclude that Donovan represented an interest adverse to the estate or that said representation of TMC and/or McChristian resulted in an actual conflict of interest in this case.[8]

First, we note that while an applicant has the burden of proving the reasonableness of its fee request under 11 U.S.C. § 330, it has been held that "in a case involving an objection under 11 U.S.C. § 327(c), the burden would be on the objecting creditor [or United States Trustee] to prove conflict of interest." *In re Flanigan's Enterprises, Inc.* 70 B.R. 248, 250–51 (Bankr.S.D.Fla.1987); *see also In re AOV Industries, Inc.*, 798 F.2d 491, 495–96 (D.C.Cir.1986). (Under 11 U.S.C. § 1103(b), once an attorney has formally stated that it has complied with that section, the burden is on the party alleging conflict of interest to produce evidence to support its claim.) Accordingly, it is the United States Trustee's burden to provide facts from which this Court could conclude that TMC and/or McChristian held an interest adverse to the estate and/or that an actual conflict of interest existed.

Second, we note that a post-petition creditor does not necessarily have an interest adverse to the estate merely because of its status as a post-petition creditor.[9] To hold

---

8. We note that the United States Trustee states, without citation to authority, in its objection that "it is universally accepted that the representation of a creditor ... is representation of an interest and would render that counsel not disinterested for purposes of representing the debtor in the same matter." While we agree with this statement that representation of a creditor is representation of an interest, the relevant statutes pro-

hibit only representation of an adverse interest as opposed to merely an interest.

9. In fact, in this case, Judge Eisenberg's signing of the financing orders is an implicit recognition that TMC, as a post-petition creditor, did not have an interest adverse to the estate but on the contrary, TMC's interest in this case was in the interest of the Debtor, its estate, and its creditors.

otherwise would be to hold that a debtor's counsel, trustee, or United States Trustee would in all cases hold an interest adverse to the estate because all of these entities become post-petition creditors in a particular case by virtue of: (i) a debtor's counsel incurring fees and having an administrative expense claim, (ii) a trustee incurring a claim for commissions, and (iii) a United States Trustee having a claim for its statutory fees.

■ Finally, we note that representation of a creditor and a debtor in the same case is not by itself a basis to deny fees under 11 U.S.C. § 328(c). As set forth above, 11 U.S.C. § 327(c), which is incorporated into 11 U.S.C. § 328(c), provides that "a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is an objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest."

Accordingly, while we agree with the United States Trustee's statement that "[r]epresentation of creditor and debtor while not *per se* improper under [11 U.S.C. § 327(c) ], is extremely limited in scope and never permitted where same results in an actual conflict between rival constituencies", representation of a creditor and a debtor does not by itself create an actual conflict of interest. To so hold would render the language of 11 U.S.C. § 327(c) useless surplusage.

With regard to the United States Trustee's assertion that Donovan's purported representation of TMC and/or McChristian constituted the representation of a party that held an interest adverse to the estate or resulted in an actual conflict of interest, a mere showing that Donovan may have represented TMC and/or McChristian in this case is not sufficient. What is required, is evidence sufficient to support a finding that such representation resulted in an actual conflict of interest or that TMC and/or McChristian held an interest adverse to the estate. While such conclusions abound, their factual evidentiary predicates are lacking.

All we have been provided with are Donovan's time entries and statements of the United States Trustee's position with regard to these entries. These time entries do not support a finding either of an actual conflict or that TMC and/or McChristian held an interest adverse to the estate. In fact, the record supports a contrary conclusion. TMC was clearly not adverse to the Debtor. Its role was not antagonistic but supportive, not harmful or unfavorable but helpful, necessary and beneficial, and rather than hinder the Debtor, it was the only available source of funds to enable the Debtor to successfully reorganize. TMC provided substantial financial resources to the Debtor at a time when the Debtor clearly needed such resources to have any chance of survival. In addition, McChristian provided management services to the Debtor. Had TMC not involved itself in this case, confirmation could not have occurred.

The two remaining issues we must address concern Donovan's disclosure under Fed. R.Bankr.P. 2014 and whether Donovan has satisfied its burden under 11 U.S.C. § 330. As to the first issue, at a hearing held on the Final Application on December 17, 1992, this Court resolved this issue in stating that "I think that at the outset of the case, you fulfilled your obligation to disclose. I wouldn't characterize it as being overly generous, but it met the requirements and that is all you have to do. You don't have to be overly generous."

As to the second issue, we hold that as a whole, the Final Application including exhibits thereto, satisfy Donovan's burden with respect to 11 U.S.C. § 330. We do find some problems with some of the disbursements for which Donovan seeks reimbursement. However, given the facts that the total of the problem disbursements is relatively insignificant, and that this decision has not been issued as promptly as this Court would like to have been able to, and that this delay has deprived Donovan of the use of money for the period of time that this matter has been under consideration, we acknowledge that Donovan's loss exceeds the questionable dis-

Otherwise, Judge Eisenberg clearly would not have signed the financing orders.

bursements and will award Donovan the total amount of fees and disbursements requested.

Donovan is directed to settle an order in accordance with the above within fifteen (15) days hereafter.