**In re John OCHOA, Debtor.**

**Bankruptcy No. 85–00569.**

United States Bankruptcy Court,
N.D. New York.

March 27, 1987.

O'Hara & Crough, Syracuse, N.Y., for debtor; Richard T. Bruno, of counsel.

## MEMORANDUM—DECISION AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

The Court has before it the Application ("Fee Application") of O'Hara & Crough, Esqs. ("O'Hara") as attorneys for the Debtor, dated September 23, 1986, seeking attorneys' fees and disbursements in connection with its representation of the Debtor during the period July 15, 1985 through May 31, 1986.

The Court notes the Fee Application is interim in nature, and has been submitted pursuant to § 331 of the Bankruptcy Code, 11 U.S.C. § 101–151326 ("Code"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.").

The Fee Application presents very perplexing problems for the Court, each of which will be dealt with separately.

## DISCUSSION

### A. CONFLICT OF INTEREST

Paragraph 49 of the Fee Application reveals that subsequent to the making of the Application [Presumably the application for appointment of O'Hara dated March 18, 1986] it came to Mr. Bruno's [Richard T. Bruno, Esq., an associate of O'Hara] attention that Applicant had not disclosed to the Court that the managing partner of the Applicant, Dennis G. O'Hara, is a partner in Hiawatha Plaza Associates, a creditor of the Debtor. The Debtor owes Hiawatha Plaza Associates unpaid rent in connection with the Debtor's operation of his former business. Hiawatha Plaza Associates is a judgment lien creditor. The Fee Application does not indicate at what point the "oversight" was discovered, and there is no indication that it was disclosed to the Court promptly after discovery.

The Fee Application continues: "Mr. O'Hara is only one of several partners in Hiawatha ... At all times during the course of the Debtor's case, Hiawatha Plaza Associates has been represented by Lee Woodard, Esq." Fee Application, ¶ 50. Additionally, "The Debtor has at all times known about Mr. O'Hara's connection with Hiawatha Plaza Associates." Fee Application, ¶ 51.

Code § 327(a), pursuant to which O'Hara was initially appointed by Order dated March 26, 1986, provides the trustee [debtor-in-possession in a Chapter 11 case] may employ one or more attorneys, "that do not hold or represent an interest adverse to the estate, and that are disinterested persons".

Code § 101(13)(A) defines a "disinterested person" as one who "is not a creditor, an equity security holder or an insider" of the debtor.

■ The fact that Dennis O'Hara, Esq. was a partner in a partnership creditor holding a judgment lien against the Debtor, brings O'Hara within the prohibition of Code § 327(a). However, the conflict of interest rule has not been uniformly applied by the various United States Circuit courts.

The United States Court of Appeals for the Fifth Circuit, in passing upon the existence of an alleged conflict of interest arising out of an attorney's representation of a director of the debtor, observed:

The Bankruptcy Code requires that an attorney who would be employed by the debtor's estate must be disinterested and not hold or represent an interest adverse to the estate. 11 U.S.C. §§ 101(13), 327 (1984). A major treatise on bankruptcy states that the requirement of disinterestedness

> appears broad enough to include anyone who in the slightest degree might have some interest or relationship that would color the independent and impartial attitude required by the Code. ... Indirect or remote associations or affiliations, as well as direct, may engender conflicting loyalties. The purpose of the rule is to prevent even the emergence of a conflict irrespective of the integrity of the person under consideration. ... 2 Collier on Bankruptcy § 327.03 at 327–19, 20 (15th ed. 1985) (footnotes omitted).

*Pierson & Gaylen v. Creel & Atwood (Matter of Consolidated Bancshares, Inc.)*, 785 F.2d 1249, 1256 (5th Cir.1986).

The Fifth Circuit Court of Appeals referred to the oft-cited United States Supreme Court decision of *Woods v. City Nat'l Bank and Trust Co. of Chicago*, 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed.2d 820 (1941), with its unequivocal pronouncement that "[w]here an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation." *Consolidated Bancshares, Inc., supra*, 785 F.2d at 1256. The Fifth Circuit Court of Appeals consequently adopted a strict standard of court review for employment of professional persons, noting the "unique nature of the bankruptcy process." *Id.*, 785 F.2d at 1256, n. 6. A similarly strict standard has been endorsed by the United States Court of Appeals for the Sixth Circuit. *Hunter Sav. Ass'n v. Baggott Law Offices Co. (In re Georgetown of Kettering, Ltd.)*, 750 F.2d 536, 540–41 (6th Cir.1984). Several other courts have denied professional compensation in full when a conflict of interests exists. *In re B.E.T. Genetics, Inc.*, 35 B.R. 269, 274 (Bankr.E.D.Cal.1983); *Matter of Cropper Co., Inc.*, 35 B.R. 625 (Bankr.M.D.Ga.1983); *In re Chou-Chen Chemicals, Inc.*, 31 B.R.

842, 853 (Bankr.W.D.Ky.1983); *In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328, 334 (Bankr.E.D.Pa.1982) ("[P]rofessionals engaged in the conduct of a bankruptcy case should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration. 1 Collier Bankruptcy Manual § 101.13 (1981) (footnotes omitted)."). *Barton v. Chrysler (In re Paine)*, 14 B.R. 272, 274–75 (W.D.Mich.1981).

The United States Court of Appeals for the Second Circuit in *Iannotti v. Manufacturers Hanover Trust Co. (Matter of New York, New Haven and Hartford Railroad Co.)*, 567 F.2d 166, 175 (2d Cir.) *cert. denied*, 434 U.S. 833, 98 S.Ct. 120, 54 L.Ed.2d 94 (1977) has taken a different view of the *Woods*, decision: "Woods' recognition of the general rule, however, does not strike us as a mandatory requirement that reorganization courts woodenly must deny compensation in every case of conflict of interest, regardless of the facts."

The Second Circuit Court of Appeals acknowledged that "*Woods* ... is the leading Chapter X case in point. It recognizes the inherent discretionary *power* of a reorganization court to disallow compensation for services and expenses on the ground of conflict of interest; but it does not *require* that a reorganization court do so." *Id.*, 567 F.2d at 174 (emphasis in original); *See also Silbiger v. Prudence Bonds Corp.*, 180 F.2d 917 (2d Cir.), *cert. denied*, 340 U.S. 813, 71 S.Ct. 40, 95 L.Ed. 597 (1950); *Berner v. Equitable Office Building Corp.*, 175 F.2d 218 (2d Cir.1949).

Bankruptcy Courts in other circuits have followed the Second Circuit's rationale. For example, Bankruptcy Judge Small has observed:

> Nevertheless, because the bankruptcy court is a court of equity (*Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966)) the bankruptcy judge should not be bound by a completely inflexible rule mandating denial of all fees in all cases. The general rule

should be that all fees are denied when a conflict is present, but the court should have the ability to deviate from that rule where the need for attorney discipline is outweighed by the equities of the case. *In re Watson Seafood & Poultry Co., Inc.,* 40 B.R. 436, 440 (Bankr.E.D.N.C.1984).

Aside from the issue of actual conflict, another concern the Court must address is O'Hara's failure to disclose a potential or actual conflict.

O'Hara's initial application for appointment as Debtor's counsel made no reference to the fact that its managing partner, Dennis G. O'Hara, Esq. was likewise a partner in one of the Debtor's major judgment creditors, Hiawatha Plaza Associates.

In fact, Bruno's Affirmation dated March 18, 1986 submitted in support of the Order of Appointment at paragraph 4, specifically states "No members or associates of O'Hara & Crough hold or represent an interest adverse to the Chapter 11 estate of the debtor and they are 'disinterested persons' as defined by 101(3) [sic] of the Bankruptcy Code, 11 U.S.C. § 101(3) [sic]." See also paragraphs 8 and 9 of Application of Debtor dated March 18, 1986.

O'Hara now acknowledges this representation was not true, but that in any event, the potential conflict had been revealed to the Debtor. In connection with the Debtor's case, other counsel was representing Hiawatha Plaza Associates.

Some courts have held the very failure to disclose a potential conflict of interest disqualifies the non-disclosing party. *See Matter of Arlan's Dept. Stores, Inc.,* 615 F.2d 925, 933–34 (2d Cir.1979); *In re Guy Apple Masonry Contractor, Inc.,* 45 B.R. 160, 162–63 (Bankr.D.Ariz.1984); *In re Coastal Equities, Inc.,* 39 B.R. 304 (Bankr. S.D.Cal.1984).

Six months elapsed between O'Hara's initial application for appointment, and the instant application; during this time no effort was made to disclose the apparent conflict, and no explanation is now offered by O'Hara. It is somewhat incongruous for O'Hara to have gone to seemingly great lengths to disclose the potential conflict of interest to the Debtor, yet overlooked the same disclosure in its initial application for employment to the Court. (Fee Application ¶ 51). Were the facts revealed at the time O'Hara applied for appointment, the Court would have required full disclosure to all of the Debtor's creditors prior to even initial consideration of O'Hara's appointment.

Code § 327(c) does not prohibit a person or firm from employment by a Chapter 11 debtor simply because the applicant is employed by or represents a creditor of the debtor, unless a creditor objects and the court finds an actual conflict. In failing to disclose Dennis G. O'Hara, Esq.'s partnership interest in a judgment creditor of the Debtor, both the creditors and the Court have been denied the pre-appointment right to scrutinize a potentially more serious conflict than that contemplated by Code § 327(c). Dennis G. O'Hara, Esq. not only previously represented a judgment creditor of the Debtor, he *was* and *is* a judgment creditor of the Debtor by virtue of his partnership interest in Hiawatha Plaza Associates.

In a similar context, a bankruptcy court recently held that a law firm which formerly represented the debtor, and which remained unpaid at the time of the filing of the Chapter 11 case, could not be appointed pursuant to Code § 327. *Matter of Boro Recycling, Inc.,* 67 B.R. 3 (Bankr.E.D.N.Y. 1986).

■ Even absent creditor objection, (assuming full disclosure of the facts), the Court is not prohibited from *sua sponte* inquiry into an apparent conflict of interest.

As Bankruptcy Judge Lavien has observed

The Bankruptcy Court, however, has the responsibility to police itself and those who practice before it in order to preserve its integrity and public confidence ... The Court must be concerned with the appearance of accommodation among the members of the bankruptcy bar and its effect on maintaining public confidence in the bankruptcy system.

*In re Anver Corp.*, 44 B.R. 615, 617 (Bankr.D.Mass.1984).

Judge Lavien was responding to counsel's argument that neither the debtor nor the creditors committee had objected to its' appointment. *Anver* involved appointment of a law firm due legal fees as debtor's pre-petition counsel; in addition, one of the members of the firm was both a 1% stockholder and director of the debtor.

█ In the instant case, Dennis O'Hara, Esq. was a partner in a judgment creditor, which for purposes of a Chapter 11 proceeding is deemed to be the holder ·of a secured claim. As well, Dennis O'Hara, Esq. is O'Hara's managing partner. Consequently, neither of the exceptions afforded by Code §§ 327(c) or 1107(b) are applicable.

## B. SERVICES RENDERED AND EXPENSES INCURRED PRIOR TO APPOINTMENT

O'Hara was appointed pursuant to an Order of the Court dated March 26, 1986, based upon an application dated March 18, 1986, filed with the Court on March 26, 1986. O'Hara now contends, as it did in March, 1986, that its appointment should be retroactive to July 15, 1985, the date on which the Debtor's petition was filed with the Court.

Among the grounds advanced for *nunc pro tunc* appointment, O'Hara contends that in August of 1985, it endeavored to obtain appointment as Debtor's counsel, but that this "application was rejected by the former Clerk of the Court", and that such action was viewed as "improper". (Fee Application, ¶ 59).

An examination of the docket of the case, as well as the correspondence in the file, fails to uncover any formal communication between O'Hara and "the former Clerk of the Court" regarding rejection of an application allegedly submitted to the Court in August, 1985. It is also noteworthy that no reference is made to the "improper" rejection of a prior application for appointment in O'Hara's March, 1986 application, nor is a plausible explanation offered for the delay in re-applying for appointment

(August 1985 to March 26, 1986). This delay was allegedly due to "the pressures of the Applicant's practice, including the pressures of the instant case, and the fact that his research might not be compensable." (Fee Application, ¶ 59).

█ O'Hara correctly recognizes that the Court is a court of equity, and that in its sound discretion, upon a proper showing, it may enter orders nunc pro tunc. *Bank of Marin v. England*, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966); *Fanelli v. Hensley (Matter of Triangle Chemicals, Inc.)*, 697 F.2d 1280, 1288 (5th Cir.1983).

█ O'Hara, while acknowledging that *nunc pro tunc* orders of appointment pursuant to Code § 327 are not favored by the United States Court of Appeals for the Second Circuit, contends this Circuit's so-called "per se" rule does not prohibit the retroactive relief it seeks. *Nunc pro tunc* appointment is argued to be proper in the absence of a showing that had the professional sought appointment prior to rendering services, the Court would not have granted approval.

The Court believes it does not "misread" the plethora of cases which clearly outline the stance adopted by the Second Circuit in support of the "per se" rule.

In addition to those cases selected by Applicant, referred to in paragraph 64 of the Fee Application, the Court notes the following cases concerning the application of the "per se" rule within this Circuit: *Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.)*, 655 F.2d 463, 469 (2d Cir.1981), *cert. denied*, 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *In re Cuisine Magazine, Inc.*, 61 B.R. 210, 216–17 (Bankr.S.D.N.Y.1986); *In re Sapolin Paints, Inc.*, 38 B.R. 807, 817 (Bankr.E.D.N.Y.1984); *Hucknall Agency, Inc. v. Nanni (Matter of Hucknall Agency, Inc.)*, 1 B.R. 125 (Bankr.W.D.N.Y.1979).

The only recognized exception to the Second Circuit's "per se" rule is the concept of "excusable neglect". *See In re Rogers-Pyatt Shellac Co.*, 51 F.2d 988, 992 (2d Cir.1931); *In re Amherst Mister Antho-*

*ny's Ltd.,* 63 B.R. 292, 294 (Bankr.W.D.N. Y.1986); *In re Brown,* 40 B.R. 728, 731–32 (Bankr.D.Conn.1984). Excusable neglect has been consistently interpreted to mean "the failure to timely perform a duty was due to circumstances beyond the reasonable control of the person whose duty it was to perform." *Beneficial Fin. Co. v. Manning (In re Manning),* 4 B.C.D. 304, 305 (Bankr.D.Conn.1978). Stated another way, "[e]xcusable neglect is present when a party fails to meet an obligation due to 'unique or extraordinary' circumstances ..." *In re Waterman Steamship Corp.,* 59 B.R. 724, 727 (Bankr.S.D.N.Y.1986), *quoting Maryland Casualty Company v. Conner,* 382 F.2d 13, 17 (10th Cir.1967).

In the instant case, even assuming, *arguendo,* that the "former Clerk of the Court" improperly rejected O'Hara's application in August of 1985, O'Hara fails to explain why the application for appointment was not re-submitted until March 1986, some seven months later, other than to allege that it was researching the law and tending to the pressures of its practice. These implausible and unsubstantiated factors hardly substantiate a finding of *excusable* neglect either in law or in fact.

## QUALITY OF REPRESENTATION

In passing upon a fee application filed pursuant to Code § 331, the Court is guided generally by the "twelve factors" enunciated in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974). In a bankruptcy context, one of the more significant factors to be considered is the "result obtained" which generally is governed by the quality of representation. The quality of Applicant's representation in the instant case bears some scrutiny, for an examination of the docket entries reveals very little activity on the Debtor's part, despite the fact that the case is fast approaching the second anniversary of its filing.

It is unclear, in the absence of the filing of a plan and disclosure statement, exactly what goal the Debtor seeks: reorganization or liquidation. A "status report" filed by O'Hara on June 6, 1986 indicates that upon completion of the sale of real property, the Debtor will seek an order approving the distribution of the proceeds, and thereafter convert to a Chapter 7.

Debtor's application references the "sale of a major asset of the Debtor's estate under the complicated provisions of § 363 of the Bankruptcy Code" as well as Debtor's prosecution of litigation in the United States District Court against the Internal Revenue Service seeking to shift the Debtor's alleged tax liability to a third party. (Fee Application, ¶ 22). Beyond these disclosures, little progress is being made toward confirmation of a plan, and in light of the status report of June 6, 1986, it is doubtful such a plan will be forthcoming.

Conversely, the case docket indicates that on January 28, 1986, the Bankruptcy Clerk served the Debtor with a Notice of Delinquency for failure to file income statements for the period July through December 1985. Also, on January 30, 1986, the Estate Administrator advised O'Hara of its failure to obtain appointment as Debtor's counsel, despite reference in the petition to Debtor's payment of a $1,500.00 retainer. The Estate Administrator further reports that as of October 22, 1986, and presumably to date hereof, the Debtor has never filed any income (operating) statements with the Court, nor has any explanation been offered for their absence.

Perhaps, the most disturbing incidents involved in O'Hara's representation of the Debtor emanate from Richard T. Burno's handling of the sale of the Debtor's major asset pursuant to Code § 363.

Presumably, the major asset referred to in the Fee Application was Debtor's real property located at 7787 Oswego Road (NYS Route 51) in the Town of Clay, Onondaga County, New York, sold to one Jay G. Bernhardt ("Bernhardt"), free and clear of liens, claims and encumbrances with such liens, claims encumbrances to attach to the proceeds of sale. See Order dated May 27, 1986.

It appears from the Application submitted by O'Hara dated May 6, 1986 ("Sale Application"), seeking an order authorizing the sale of the Oswego Road property to Bernhardt, that the initial offer was made

---

to the Debtor on August 7, 1985 and accepted on August 9, 1985, subject to certain contingencies. (Sale Application, ¶ 16).

The contingencies to the sale, with the exception of Court approval, were removed by Bernhardt on September 20, 1985, and Bernhardt, as of May 1986, had served Debtor notice that the "time is of the essence" with respect to the closing of the sale of the property. (Sale Application ¶¶ 19–27).

It is interesting to note at this juncture, that at the point at which Bernhardt was advising the Debtor that time was of the essence and that a closing must be immediate, O'Hara had yet to seek Court approval of the sale. Obviously, Bernhardt either misunderstood or was misled in concluding that an immediate closing of the transaction could and would occur.

The Court further recalls that almost simultaneously with its receipt of the Sale Application and proposed Order to Show Cause seeking shortened notice to creditors on May 7, 1986 submitted by O'Hara, it received a phone call from Bernhardt chastising the Court for "sitting on" the Order approving the sale.

It is apparent from the Sale Application, paragraph 28, that the delay was admittedly occasioned by O'Hara, more specifically by Richard T. Bruno, Esq., although no explanation is offered for that delay.

On May 8, 1986, the Court signed an Order shortening the time for notice to creditors of the proposed sale, and directing a hearing to be held at the U.S. Courthouse in Syracuse, New York on May 20, 1986. Thereafter, on May 27, 1986, the Court entered an Order approving the sale to Bernhardt upon certain terms and conditions, one of the most significant of which required, "within thirty (30) days after the closing of the sale, the Debtor shall take such action as necessary or appropriate to obtain an Order of this Court permitting Debtor to distribute the proceeds of the sale to the persons or entities having an interest in the same," (Order of May 27, 1986, ¶ F).

The Order of May 27, 1986 also provided that pending distribution, the proceeds of sale were to be deposited in an income producing account at a financial institution of Debtor's choice, from which no withdrawals could be made absent a further order of the Court.

Court presumes that a closing of the sale to Bernhardt occurred several months ago, yet the docket fails to reveal the entry of any order authorizing distribution of the proceeds, nor is there any indication as to where the sale proceeds have been deposited. Once again, a substantial, unexplained delay has occurred to the detriment of creditors.

In light of the foregoing, it is difficult for the Court to find "quality representation" of the Debtor and, in fact, it is apparent that there may even be a willful violation of the Court's Order dated May 27, 1986.

CONCLUSION

As indicated at the outset, the case before the Court in which the instant fee application has been submitted has presented very perplexing problems.

Rarely is the Court faced with a factual scenario which leads it to deny all compensation for professional services rendered to the Debtor, for as Judge Small observed in *In re Watson Seafood & Poultry Co., Inc.,* *supra,* 40 B.R. 436, 440, "The general rule should be that all fees are denied when a conflict is present, but the Court should have the ability to deviate from that rule where the need for attorney discipline is outweighed by the equities of the case."

Unfortunately, in the instant case, the Court perceives its duty to send a clear and succinct message to Debtor's counsel substantially outweighs the equities presented by the Fee Application. The Court cannot and will not tolerate the actions of any debtor's counsel similar to those so clearly illustrated by the conduct of Debtor's counsel herein.

Consequently, the Fee Application of O'Hara is denied in its entirety. The Court will, however, permit recovery of those monies disbursed by O'Hara in ac-

cordance with the Local Rules of Bankruptcy Practice and the prior decisions of the Court, to wit:

| | |
|---|---:|
| Reproduction cost post-appointment.. | $242.00 |
| Long distance calls post-appointment | 28.52 |
| Postage post-appointment.......... | 32.06 |
| Federal Express-Order to show cause | 274.75 |
| Tax Search ...................... | 20.00 |
| | |
| Total | $597.33 |

The remainder of the claimed expenses are either not reimbursable, or appear to have already been reimbursed to O'Hara.

IT IS SO ORDERED.