## In re GREATER POTTSTOWN COMMUNITY CHURCH OF the EVANGELICAL CONGREGATIONAL CHURCH, Debtor.

### Bankruptcy No. 82–00347S.

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 17, 1987.

Ellis Brodstein, Reading, Pa., Trustee.

Henry Markofski, Pottstown, Pa., for debtor.

David C. Schattenstein, Allentown, Pa., for trustee.

Mark C. Schultz, Norristown, Pa., for Continental Bank.

James W. Hardin, Pottstown, Pa., Chairman of Creditors' Committee.

David L. Allebach, Jr., Pottstown, Pa.

John Wetzel, Philadelphia, Pa., for Creditors' Committee.

William A. Harvey, Philadelphia, Pa.

James J. O'Connell, Office of the U.S. Trustee, Philadelphia, Pa.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

At proceedings on December 9, 1987, in the above-captioned bankruptcy case in which we conducted the Final Audit hearing, a hearing on seventy-five (75) Objections to Proofs of Claim filed by the Trustee, and a hearing on an Application for compensation from assets of the estate filed by Henry C. Markofski, Esquire, Counsel for the Debtor, we indicated an intention to deny Mr. Markofski's Application entirely and promised that an Opinion explaining our reasoning in detail would follow. In this within Opinion, we hold that, when counsel for a debtor has failed to obtain court approval for his employment and manifested gross conflicts of interest by simultaneously representing creditors in proceedings against the debtor in this Court, compensation from the estate must be denied in its entirety.

This case was filed as a voluntary Chapter 11 proceeding almost six years ago, on January 27, 1982. The impetus for the filing was financial difficulties of the Debtor Church resulting when a significant number of the congregation members lost confidence in the Church's pastor, Dr. Roy A. Smith, Sr. In particular, congregation members became increasingly skeptical about the use to which Dr. Smith was putting funds which many members had contributed towards "building fund investments" of the church.

On July 1, 1982, on the uncontested Application of James A. Hardin and Edna M. Hardin, former members of the congregation, Ellis Brodstein, Esquire, was appointed Trustee. On August 16, 1982, the law firm of Perkin, Rapoport, and Schattenstein was appointed as counsel for the Trustee. David C. Schattenstein, Esquire, of that firm has performed most of the legal duties for the Trustee in this case. However, neither our thorough search of the docket and the file nor perusal of his Application for compensation provides any evidence that Mr. Markofski was ever appointed as counsel for the Debtor by this Court.

On October 29, 1982, the Trustee moved to convert this case to a Chapter 7 proceeding. The Debtor contested this motion and made several attempts at preparing a Disclosure Statement which would muster court approval. No successful Disclosure Statement was ever presented and, on August 3, 1983, this Court entered an Order converting the case to a Chapter 7 proceeding. Mr. Brodstein remained as Trustee and Mr. Schattenstein remained as his counsel.

On March 17, 1983, a creditors' committee (hereinafter "the Committee"), consisting of eight (8) former members of the congregation was appointed. James Hardin was confirmed as Chairman and Linda Newcomb as Secretary of the Committee by this Court.

Over the years, the Committee has been very active and vocal. Their principal goal, in addition to protecting their own rights as creditors, was to pursue Dr. Smith for activities which the Committee believed to have been not only deceptive and the cause of substantial financial hardship to many deeply religious and hard-working people of moderate means, but illegal as well. The Committee has placed considerable pressure upon the Trustee and his Counsel to vigorously pursue legal proceedings againt Dr. Smith, who was subsequently defrocked as a minister by the Evangelical Congregational Church, the parent of the Debtor. Joined by a relatively small band of remaining followers, Dr. Smith formed a group known as the Grace Bible Believers Fellowship (hereinafter "Grace").

We note that the Trustee, in apparent pursuit of the issues raised by the Committee, commenced an Adversary proceeding against Dr. Smith on November 30, 1983, and obtained a temporary restraining order to prevent his attempting to remove personal property from the Debtor's premises, but took no further action. An Order to take a 2004 Examination of Dr. Smith was entered in favor of the Trustee on February 9, 1984, but it is not clear what results were achieved—or whether Dr. Smith was actually ever even examined. Dr. Smith has thus far been investigated by the federal and state securities commissions without indictment. Whether the Trustee and his counsel could have performed their efforts to investigate Dr. Smith's activities more vigorously is an area of sharp dispute between the Committee and the Trustee's counsel, concerning which we have inadequate data to form an opinion.

However, the Committee has been even more outspoken in its criticism of the role of Mr. Markofski because of his apparent close association with Dr. Smith and Grace. It was admitted by Mr. Markofski that, by means of a notice in a church service bulletin distributed by Grace on November 13, 1983, he solicited investors in the Debtor to hire him as counsel to file Proofs of Claim on their behalf against the Debtor for a fee of $25.00 each. We note that, on December 13, 1983, Mr. Markofski forwarded six

(6) Proofs of Claim to this Court on behalf of several investors, and he admitted receiving compensation from at least some Grace members for performance of this legal task.

Furthermore, on January 12, 1984, Mr. Markofski filed a Motion for Relief from Section 362 Automatic Stay on behalf of, *inter alia,* Dr. Smith and a non-profit corporation affiliated with Grace to allow the claimants to recover certain personal property from the Debtor, apparently some of that same property which Dr. Smith was enjoined from taking from the Church by the temporary restraining order. In this pleading, Mr. Markofski designated himself as "Attorney for Claimants." On March 7, 1984, our predecessor, the Honorable William A. King, Jr., denied the Motion in a terse Memorandum, which stated, in part, as follows:

> Mr. Markofski appears as counsel of record for the debtor, Greater Pottstown Community Church of The Evangelical Congregational Church. As such, he is under a duty to protect the interests of the debtor's estate. Mr. Markofski's most recent appearance as counsel for movants represents an obvious conflict of interest with his representation of the debtor. For this reason, we will enter an Order denying the relief requested and directing that the automatic stay under Section 362 of the Bankruptcy Code is to remain in full force and effect.

In any event, most of the initial flurry of activity in this case had ceased by the spring of 1984. This inactivity caused the Committee to launch a campaign of correspondence to Judge King, telephone calls to court employees, and complaints to the news media. This campaign apparently had died down by the time that the undersigned was appointed to succeed Judge King on August 27, 1986, for we did not receive any correspondence about the case and were totally unaware of it until summer, 1987. Becoming aware of the presence of the case and its suspended status, we requested Mr. Schattenstein to file a Status Report, which he did on July 17, 1987.

Believing that this matter was dormant for no particular reason except unresolved charges against Dr. Smith which became more unlikely of any dramatic resolution with the passage of time, we entered an Order of July 24, 1987, directing the Trustee to file any Objections to Proofs of Claim, Motions to sell property, or any other pleadings which he deemed appropriate, and any parties seeking compensation from the Estate to file Applications requesting same on or before August 21, 1987, and scheduling a hearing on all matters filed and a status conference on October 6, 1987.

That Order induced Mr. Markofski to file the instant Application, originally seeking compensation of $10,415.00, from the Estate on August 21, 1987. Objections were filed to his Application by Mr. Schattenstein, Mr. Hardin, and John Wetzel, Esquire, who sought compensation himself as counsel for the Committee.

The October 6, 1987, hearing was attended by Mr. Markofski, all of the parties objecting to his Application, and, *inter alia*, approximately twenty (20) former members of the Debtor's congregation. We allowed Mr. Hardin and any of those parties present who wished to do so to address the Court, and we were greatly impressed with the sincerity and tragedy expressed by the financial and spiritual losses suffered by the former congregation members present. Neither Dr. Smith nor any of his followers, except to the extent Mr. Markofski can be placed in this category, appeared. In an Order of October 6, 1987, we allowed Mr. Markofski until October 23, 1987, to supplement his fee Application, and allowed any interested party until November 10, 1987, to file Briefs on the issue of his entitlement to compensation.

We also note that we once again directed the Trustee's Counsel, who had not yet done so, to complete filing Objections to Proofs of Claim and to provide detailed support, per *In re Meade Land and Development Co.*, 527 F.2d 280 (3rd Cir.1975), to his own fee Application by October 23, 1987, setting November 17, 1987, as the date for a Final Audit hearing. When the Trustee's Counsel failed again to file these matters in timely fashion, we entered a further Order of November 3, 1987, directing him to do so on November 9, 1987, upon penalty of sanctions, and re-scheduled the Final Audit hearing to December 9, 1987. While the Objections were finally filed on November 2, 1987, the Trustee's Counsel did not favor us with copies of his own detailed fee Application or the Brief in opposition to Mr. Markofski's fee Application until December 9, 1987, at the hearing of that date. This prompted us to schedule a further hearing on January 12, 1988, to finally resolve the fee Application of the Trustee's Counsel and a form of Order resolving the Objections to Proofs of Claim, resolution of all of which were allegedly hammered out with the Committee on that date. Given this course of developments, the Trustee and his Counsel have reduced our confidence in their diligence in pursuing any aspects of this case, and we have not yet decided whether and what sanctions may be appropriate in light of their failure to comply strictly with our Orders.

On October 22, 1987, Mr. Markofski filed an Amended Application scaling his request down to $7,522.32. On November 12, 1987, he filed a Brief in support of same. This Amended Application elicited Objections from Messrs. Schattenstein and Hardin, who disputed Mr. Markofski's entitlement to any fees, principally due to his conflicts of interest in representing creditors featuring Dr. Smith and his small band of followers in Grace.

We note that, on October 6, 1987, we denied the Application of Mr. Wetzel for counsel fees, on the sole ground that he had never been appointed as counsel for the Committee by this Court. We did this with some regret, because it was apparent to us that Mr. Wetzel had made a substantial positive contribution to the case, and we strongly recommended that the Committee members who had hired him remember his contribution at the time that distribution was consummated.

We could decide Mr. Markofski's Application simply by observing that he, like Mr. Wetzel, was never appointed as counsel for

the Debtor by the Court and stop there. *See* 11 U.S.C. §§ 1107(a), 327(a); 2 COLLIER ON BANKRUPTCY, ¶ 327.02, at 327–6 to 327–14 (15th ed. 1987). *Cf. In re Arkansas Co.*, 798 F.2d 645, 647–50 (3d Cir.1986) (counsel for Creditors' Committee must be appointed by court to obtain compensation from the estate, and permission for appointment *nunc pro tunc* will not be lightly granted). However, there is a provocative issue regarding the effect of a conflict of interest of counsel for a debtor upon his efforts to seek compensation which the parties have addressed and which we believe should be addressed as an alternative basis for our holding.

As we recently reiterated in *In re J & J Record Distributing Corp., Judge v. Pincus, Verlin, Hahn & Reich, P.C.*, 80 B.R. 53, 55 (Bankr.E.D.Pa.1987); and *In re Crouse Group, Inc.*, 75 B.R. 553, 557–58 (Bankr.E.D.Pa.1987), a debtor-in-possession (hereinafter "DIP") and counsel who represents it are fiduciaries for the DIP's creditors, "in the highest sense of the term 'fiduciary.'" *See Wolf v. Weinstein*, 372 U.S. 633, 643–53, 83 S.Ct. 969, 976–81, 10 L.Ed.2d 33 (1963).

A breach of this fiduciary duty requires disallowance of compensation from the estate. *Woods v. City National Bank & Trust Co.*, 312 U.S. 262, 267–70, 61 S.Ct. 493, 496–98, 85 L.Ed. 820 (1941). Any conflict, even one which is not utilized for the self-advantage by such a fiduciary, requires a severe response from the court. *See Mosser v. Darrow*, 341 U.S. 267, 271, 71 S.Ct. 680, 682, 95 L.Ed. 927 (1951) (Trustee surcharged for profits made by his employees in trading of the Debtor's securities at the same time that he served as Trustee).

These principles, established in cases decided under the Bankruptcy Act without the benefit of express legislative authority, have been carried over in cases interpreting 11 U.S.C. §§ 327(a), (c) of the Code, regarding employment of professional persons, which provides as follows:

§ 327. Employment of professional persons.

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, *that do not hold or represent an interest adverse to the estate, and that are disinterested persons*, to represent or assist the trustee in carrying out the trustee's duties under this title.

.     .     .     .     .

(c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, *unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest* ... (emphasis added).

*See, e.g., In re AOV Industries, Inc.*, 797 F.2d 1004, 1010–14 (D.C.Cir.1986); *In re Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1255–58 (5th Cir.1986); *In re Georgetown of Kettering, Ltd.*, 750 F.2d 536, 540–41 (6th Cir.1984); *In re Paine*, 14 B.R. 272, 274–75 (W.D.Mich.1981); *In re Watson Seafood & Poultry, Inc.*, 40 B.R. 436, 442–43 (Bankr.E.D.N.C.1984); and *In re Chou-Chen Chemicals, Inc.*, 31 B.R. 842, 849–51 (Bankr.W.D.Ky.1983).

So strict is the policy of avoiding conflicts of interest that general counsel for a DIP or a trustee may not be appointed unless (s)he is a "disinterested person," as defined by 11 U.S.C. § 101(13). *See, e.g., In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328, 334–38 (E.D.Pa.1982). Too close a relationship with, as well as in any sense an adversarial relationship with, a debtor will disqualify counsel. *Compare In re G & H Steel Service, Inc.*, 76 B.R. 508 (Bankr.E.D.Pa.1987) (counsel closely related to debtor permitted to act as special counsel for DIP only). A failure to disclose an "interest," *In re Marine Power & Equipment Co.*, 67 B.R. 643, 348 (Bankr. W.D.Wash.1986), or discovery of an "interest" subsequent to counsel's appointment, *In re Paolino*, 80 B.R. 341, 345–46

(Bankr.E.D.Pa.1987), may result in denial of compensation. Here, of course, Mr. Markofski proved the reason why court approval is a necessary condition for compensation by failing to submit an application for appointment, and hence disclosing nothing of his gross conflicts of interest.

Mr. Markofski's principal argument is that a 1984 Amendment to 11 U.S.C. § 327(c), which previously read as follows, eliminates the total ban of compensation of counsel where there is potential conflict, and allows compensation unless there is an actual conflict:

> (c) In a case under chapter 7 or 11 or this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, *but may not, while employed by the trustee, represent, in connection with the case, a creditor* (emphasis added).

*Compare* present § 327(c), quoted at page 9 *supra.* Cited in support of his position by Mr. Markofski are *In re Roberts*, 75 B.R. 402 (D.Utah 1987); and W. NORTON, 1986 ANNUAL SURVEY OF BANKRUPTCY LAW 338.

▬ It is true that the original wording of 11 U.S.C. § 327, prohibiting any simultaneous representation of a trustee and a creditor, was eliminated in the 1984 Amendments. However, as Norton himself points out in an Editors' Comment in 1987–88 W. NORTON, BANKRUPTCY LAW & PRACTICE, BANKRUPTCY CODE 124, "the Code allows counsel to represent the trustee under § 327(c), even though counsel was previously employed by a creditor, but further representation of the creditor by that attorney in connection with the Title 11 U.S.C. case is improper and forbidden." We believe that the 1984 Amendment to 11 U.S.C. § 327(c), as explained by Norton's later work, only allows an independent trustee to hire the same counsel as formerly was employed by a creditor if perchance no conflict exists in counsel's doing so. It does *not*, however, and could not, alter the fundamental principle established by the Supreme Court in *Woods* and *Mosser* that any apparent or actual conflict of interest cannot be tolerated. *Cf. In re*

*Grant Broadcasting of Philadelphia, Inc.,* 71 B.R. 655, 662–63 (Bankr.E.D.Pa.1987) (1984 Amendment of 11 U.S.C. § 1103(b) did not significantly change prohibition of apparent or actual conflict in employment of professionals by a Creditors' Committee). Therefore, even as amended, § 327(c) does *not* authorize any apparent or actual conflicts. Further, we believe that a prohibited apparent or actual conflict arises perforce when (1) counsel for the trustee represents a creditor simultaneously; and (2) counsel for a debtor or DIP, whose interests are necessarily diverse from those of a creditor, as opposed to an independent trustee, has represented a creditor in the past or, what is even more clearly objectionable, purports to represent a creditor in the same proceeding in which he represents the DIP.

We acknowledge that *Roberts* and some other cases, notably *In re Ochoa*, 74 B.R. 191 (Bankr.N.D.N.Y.1987), suggest that courts should not be rigid in enforcing § 327(c) and denying deserving counsel of compensation because of technicalities. However, these cases cannot be of much comfort to Mr. Markofski. In *Roberts*, the district court did reverse an order disallowing compensation to a law firm which had simultaneously represented, in separate bankruptcies, (1) individual principals of a corporation to which the principals owed money and (2) the corporation itself. However, the district court affirmed an order disallowing compensation for representation of the corporation by the firm because the firm failed to divulge that it was a creditor of the corporation. In the course of its Opinion, the district court stated that "simultaneous representation of the debtor and a creditor would constitute a conflict of interest." 75 B.R. at 405–06.

In *Ochoa*, compensation to the firm representing the debtor was denied, although not solely because of a conflict arising from the fact that a partner in the lawfirm was also a partner in a creditor, but also because of the failure of the firm to obtain timely court appointment as counsel.

Here, as in *Ochoa*, Mr. Markofski failed to obtain court appointment as counsel, and went counsel there one better by never even seeking appointment *nunc pro tunc,*

as did counsel in *Ochoa,* even up to the present. The conflict between the Debtor here and the creditors which Mr. Markofski periodically represented *was* that of debtor and creditor, the precise sort of conflict that the *Roberts* court states *is* intolerable.

The post–1984–Amendment cases which we found most analogous to the instant case were *In re Thompson,* 77 B.R. 113 (N.D.Ohio 1987); and *In re Michigan General Corp.,* 77 B.R. 97 (Bankr.N.D.Tex. 1987). In *Michigan General,* the element of lack of "disinterest" arising from the fact that the law partner of the debtor's counsel was on the Board of Directors of a corporation controlling the debtor was found not cured by the fact that counsel agreed to waive any claims against the debtor's estate on account of any pre-petition transfers to the firm found to be preferential. All compensation to the debtor's counsel was thus denied. In *Thompson,* counsel for the trustee filed a proof of claim for a creditor of the debtor. The district court reversed a scaled-down fee award and denied all compensation because of that action.

We believe that the conduct of Mr. Markofski is much more egreguous than that involved in either *Thompson* or *Michigan General.* It is certainly not, as in *Michigan General,* a case of counsel's inability to be disinterested because his firm is too closely associated with the Debtor. *Thompson* involved the representation of a single creditor by counsel subsequent to his employment as counsel for the trustee. Here, Mr. Markofski not only solicited and filed proofs of claim for a *number* of creditors of the Debtor, including Dr. Smith, but he also filed a § 362 motion against the Debtor, designating himself therein as attorney for the moving claimants, during the very period of time for which he is now seeking compensation for representing the Debtor.

It is ironic that such objectionable conduct would arise in the context of a case involving a church. Speaking of the *Woods* case, the court in *Chou–Chen, supra,* observes that the prohibition of conflicts of interests "has its genesis in the broadest ethical terms, running as deep as the pre-Biblical injunction to do good and eschew evil." 31 B.R. at 849. Although, like the court in *Chou–Chen,* we recognize that bankruptcy proceedings are not "morality plays" and that we do not "sit in enforcement of the Ten Commandments," *id.* at 851, we also acknowledge that Jesus Christ commented upon this principle by observing that "if a house be divided against itself, that house cannot stand." *Mark* 3:25 (King James). Thus, at least since biblical times, conflicts of interest have been perceived as fundamentally destructive.

Recognition of this principle therefore provides a clear alternative basis for our following Order denying the Application for compensation from the estate funds filed by Mr. Markofski.