### In re AIRCRAFT INSTRUMENT & DEVELOPMENT, INC., Debtor.

#### Bankruptcy No. 92–11294.

United States Bankruptcy Court, D. Kansas.

Feb. 24, 1993.

Edward J. Nazar, Laurie B. Williams, Redmond, Redmond, & Nazar, Wichita, KS, for trustee.

Connie R. DeArmond, U.S. Atty's. Office, Wichita, KS, for IRS.

Thomas J. Lasater, Fleeson, Gooing, Coulsen & Kitch, Wichita, KS, for K.S.B. & T.

Richard Wieland, U.S. Trustee's Office, Wichita, KS, for U.S. trustee.

William R. Smith, Hershberger, Patterson, Jones & Roth, Wichita, KS, for R.C. Allen.

Robert E. Nugent, Morris, Laing, Evans, Brock & Kennedy, Chartered, Wichita, KS, for Sigma–Tek, Inc.

Jon R. Hansen, Wichita, KS, for debtor.

Carl N. Kelly, Peck, KS.

## MEMORANDUM OF DECISION ON R.C. ALLEN INSTRUMENTS, INC.'S MOTION TO DISQUALIFY ACCOUNTANTS

JOHN K. PEARSON, Bankruptcy Judge.

The above captioned bankruptcy case is before the Court on the motion of R.C. Allen Instruments, Inc. ("R.C. Allen") to disqualify Allen, Gibbs & Houlik, the accounting firm retained by the trustee to assist him in connection with his handling of the bankruptcy estate. R.C. Allen appears by William R. Smith of Hershberger, Patterson, Jones & Roth, Wichita, Kansas. The trustee, Edward J. Nazar ("trustee"), appears in person and by Laurie B. Williams of Redmond, Redmond & Nazar, Wichita, Kansas. The debtor, Aircraft Instrument & Development, Inc. (AID) did not appear.

### NATURE OF ACTION

Although the facts on this motion are somewhat complicated, they are not seriously in dispute. Before the Court is a question of law as to whether an accounting firm "represents" clients when it provides them accounting services and advice. For the reasons set out below, the Court denies the motion.

### FACTS

The Court makes the following findings of fact:

1. The above captioned bankruptcy was filed on April 17, 1992.

2. On July 14, 1992 the Internal Revenue Service ("IRS") moved for the appointment of a trustee.

3. On August 18, 1992, after hearing evidence, the Court found as a matter of fact that the appointment of a trustee was required to protect the best interests of creditors.

4. Pursuant to the order of the Court, the United States Trustee appointed Edward J. Nazar trustee of the bankruptcy estate of the debtor on August 21, 1992. Edward J. Nazar's appointment was approved by order dated August 21, 1992.

5. The trustee immediately undertook an investigation of the assets and liabilities of the estate.

6. On September 29, 1992, the trustee sought approval of the Court to retain Allen, Gibbs & Houlik as accountants to assist him in analyzing the financial affairs of the debtor.

7. The Court approved that employment on October 5, 1992.

8. Since their retention, the accountants have sought to unravel the byzantine affairs of the debtor. Their quest has been materially complicated by the actions of the officers and employees of R.C. Allen and the officers and directors of AID

9. In late 1991, AID was substantially delinquent in the payment of certain payroll taxes and the IRS was threatening to seize the business' assets to satisfy its claim. Although AID did not seriously dispute the amount of its tax liability it was simply unable to pay the employment taxes from its current operations and unable to borrow money to make the payments.

10. In late 1991, the officers of AID formed R.C. Allen, a new Kansas corporation, and leased substantially all of AID's assets to R.C. Allen for a net payment of $8,000 per month to AID. R.C. Allen assumed certain selected liabilities of the debtor, not including the tax liability. R.C. Allen made payments on some of AID's trade debt in addition to the $8,000.00 per month lease payment. The $8,000 figure paid to AID was based on the cash flow of the business and not on the market rental value of the property purportedly leased.

11. The lease of the assets of AID to R.C. Allen was a sham transaction designed to hinder, delay or defraud the IRS in the enforcement and collection of AID's tax liabilities.

12. The IRS continued its enforcement efforts against AID and again threatened to seize the assets "leased" to R.C. Allen in April of 1992.

13. AID thereafter filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Court.

14. In January 1993, at approximately the time the instant motion was filed, the Court ordered R.C. Allen to surrender possession of AID's assets and provide an accounting therefor.

15. That order to turn over is presently under appeal, although since R.C. Allen was unable to obtain a stay pending appeal, the trustee has taken possession of the assets of AID that he can find.

16. Allen, Gibbs & Houlik has as a regular annual audit clients a number of aircraft parts and instruments-related businesses.

17. Included among its clients, and the only one specifically identified in the testimony is Sigma Tek, Inc. of Augusta, Kansas. Sigma Tek manufactures a number of lines of avionics and aircraft instruments, including a line of vacuum gyros (also called air-driven gyros). Approximately twenty-five percent of Sigma Tek's sales volume comes from the sale of vacuum gyros and Sigma Tek sells an estimated ninety-five percent of vacuum-driven gyros sold in the United States.

18. AID also manufactures a line of vacuum gyros, but the percentage of its business volume generated by the sale of vacuum gyros or its percentage of the United States' market were not estimated for the Court.

19. At one time in the mid–1980's, the officers of AID had conversations with the president of Sigma Tek concerning the acquisition of AID by Sigma Tek. Apparent-

ly no in-depth discussions were had and nothing came of the discussions.

20. As indicated above, Sigma Tek regularly engages Allen, Gibbs & Houlik's audit accounting services in connection with its annual audit.

21. Allen, Gibbs & Houlik provided certain information to Sigma Tek at the direction of the trustee in this case in January 1993, based on the sales volume information disclosed at the hearing on the trustee's motion to take possession of the assets.

22. Sigma Tek is a potential purchaser of the debtor's assets.

23. Although none were specifically identified, Allen, Gibbs & Houlik regularly provide audit services to a number of other manufacturing clients in the aircraft industry in the Wichita area.

24. Allen, Gibbs & Houlik has advised all of its regular audit clients, including Sigma Tek, that it will be unable to advise them or assist them in interpreting infor-

mation on AID in connection with any potential sale of assets of AID.

■ 25. Allen, Gibbs & Houlik holds no claim against the bankruptcy estate.[1]

## CONCLUSIONS OF LAW

26. Allen, Gibbs & Houlik is a disinterested person as that term is defined under the Bankruptcy Code.

27. Allen, Gibbs & Houlik represents no interests materially adverse to the interests of the estate and there is no other reason for concluding that it should be disqualified from assisting the trustee.

## DISCUSSION

■ At issue here is whether an accounting firm, which previously did accounting work for a competitor of the debtor, may be retained by the trustee to assist in determining the financial status of the debtor as well as possibly assist in the liquidation of certain assets of the debtor. Resolution of the questions involves a construction of two sections of the Bankruptcy Code: 11 U.S.C. §§ 101(14) and 327.[2] R.C. Allen

---

1. Any right to reimbursement that Allen, Gibbs & Houlik may have for services and expenses incurred in connection with its engagement by the trustee herein is not a "claim" as that term is defined under the Bankruptcy Code. *See* 11 U.S.C. § 101(5).

2. The term "disinterested person" is defined in 11 U.S.C. § 101(14) as follows:
   "disinterested person" means person that—
   (A) is not a creditor, an equity security holder, or an insider;
   (B) is not and was not an investment banker for any outstanding security of the debtor;
   (C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;
   (D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and
   (E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason;

11 U.S.C. § 327 states:
   (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.
   (b) If the trustee is authorized to operate the business of the debtor under section 721, 1202, or 1108 of this title, and if the debtor has regularly employed attorneys, accountants, or other professional persons on salary, the trustee may retain or replace such professional persons if necessary in the operation of such business.
   (c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.
   (d) The court may authorize the trustee to act as attorney or accountant for the estate if such authorization is in the best interest of the estate.
   (e) The trustee, with the court's approval, may employ, for a specified special purpose,

would have the Court equate the services of an accountant in advising the trustee on accounting, tax, and other financial matters with the work of an attorney representing the trustee in court and out of court with respect to legal actions in connection with the bankruptcy case. The Court concludes that there is a fundamental difference between the services of the two professions in that an accountant cannot be said to "represent" the interests of the estate.

The work of an accountant in a bankruptcy case is largely internal in that the accountants advise the trustee concerning the accuracy of the information available and the trustee or to some other party in interest and, with the possible exception of tax work which may constitute representation if it involves appearances before the tax court or other tax tribunals, does not constitute representation as that term is generally used in adversarial system of justice developed in the common law countries.

■ Equally important, Allen, Gibbs & Houlik in specific and accountants in general, do not advise more than one client concerning any particular set of facts. Thus, Allen, Gibbs & Houlik has indicated to its regular audit clients that it cannot provide them with advice in conjunction with anything relating to AID. While it or any other accountant may continue to provide audit advice, audit advice relates almost exclusively to internal accounting transactions of the person engaging the accountant.

R.C. Allen has not been able to find any cases relating to the disqualification of accountants, other than *In re Roberts,* 46 B.R. 815 (Bankr.D.Utah 1985), *aff'd in part, modified in part, rev'd in part,* 75 B.R. 402 (D.Utah 1987). *Roberts,* however, is clearly distinguishable since the accounting firm that was disqualified also held a

claim against the debtor and, therefore, was by definition not "disinterested." *See also In re Siliconix, Inc.,* 135 B.R. 378, 380 (N.D.Cal.1991) (accounting firm denied employment because it held eighth largest claim against debtor).

The Court finds persuasive the *In re CVC, Inc.,* 120 B.R. 874 (Bankr.N.D.Ohio 1990) opinion. In that case, the court denied an accounting firms' application for interim compensation based on the accountants' dual representation; the accountants were hired by the trustee, but were subsequently hired by a third party to assist in the purchase of the debtor's assets. In comparison, Allen, Gibbs & Houlik has stated that it will not assist or represent any third party in acquisition of the debtor's assets. Thus, there is no actual conflict.

■ Moreover, while the Court believes that there is a basic distinction between the type of services provided by an accounting and firm and those provided by a law firm, there is a considerable body of authority supporting dual representation by attorneys. The Bankruptcy Code originally barred a law firm from representing both the trustee or debtor in possession and one or more creditors.[3] However, that provision was modified in 1984. Pub.L. No. 98–353. Accordingly, a single law firm may represent the interest of the estate and creditors in connection with the same case unless an actual conflict exists. *In re RPC Corp.,* 114 B.R. 116 (M.D.N.C.1990); *In re Renninger Mason Contractors, Inc.,* 58 B.R. 516 (Bankr.E.D.Pa.1986).

Additionally, a considerable body of law has developed around the issue of whether a law firm may represent a debtor in possession and one or more creditors. Not surprisingly the courts have reached con-

---

other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

(f) The trustee may not employ a person that has served as an examiner in the case.

[Emphasis in the original.]

**3.** Former section 327(c) provided:

In a case under chapter 7 or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, but may not, while employed by the trustee, represent, in connection with the case, a creditor.

flicting conclusions. One view seems to be that a law firm may not represent the debtor in possession and represent creditors, even if representation of the creditor pertains to an unrelated matter. *In re Micro–Time Management Systems, Inc.*, 102 B.R. 602 (Bankr.E.D.Mich.1989); *In re Greater Pottstown Community Evangelical Congregational Church*, 80 B.R. 706 (Bankr.E.D.Pa.1987). However, another view provides that representation of creditors of a particular estate in conjunction with unrelated matters does not constitute cause for concluding that the law firm is not disinterested and, therefore, barred from representing the debtor in possession. *In re Waterfall Village of Atlanta, Ltd.*, 103 B.R. 340 (Bankr.M.D.Ga.1989); *In re Stamford Color Photo, Inc.*, 98 B.R. 135 (Bankr.D.Conn.1989).

In any event, R.C. Allen has presented no other basis than Allen, Gibbs & Houlik's audit work for Sigma Tek and other manufacturers for disqualification. It presents no analysis of the statutory language or of the facts in support of its motion. Accordingly, R.C. Allen's motion is overruled.

The foregoing constitutes findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a) and Fed.R.Bankr.P. 7052. A separate judgment will be entered giving effect to the determinations reached herein.